MARVIN L. BELGUM, BY AND THROUGH HIS WIFE AND NEXT FRIEND, LOREEN L. BELGUM, CONSERVATOR OF THE ESTATE OF MARVIN L. BELGUM, APPELLANT, V. MITSUO KAWAMOTO & ASSOCIATES, INC., AND DENNIS PETERS, APPELLEES.

459 N.W.2d 226

Filed August 17, 1990.    No. 88-572.

Richard A. Douglas, of Winner, Nichols, Douglas, Kelly and Arfmann, P.C., for appellant.

Joy Shiffermiller and J.L. Zimmerman, of Atkins Ferguson Zimmerman Carney, P.C., for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

Plaintiff-appellant, Marvin L. Belgum, filed an amended petition in the Scotts Bluff County District Court against several defendants, including defendants-appellees, Dennis Peters and his employer, Mitsuo Kawamoto & Associates, Inc. (Kawamoto). Defendant Kawamoto is an architectural firm hired by Monument Mall Associates, Inc., to plan the building of a mall in Scotts Bluff County. Defendant Peters was Kawamoto's project representative. Only Kawamoto and Peters are appellees in this appeal.

Belgum alleged in his petition that he worked on the mall's construction as an employee of B.W. Harris Masonry Construction (Harris). Harris was a subcontractor hired to install masonry at the mall. Belgum further alleged that as a result of the negligent acts and omissions of the defendants, he fell from a scaffold and sustained serious personal injuries on January 22, 1986.

Kawamoto and Peters separately answered. Each denied any negligence and alleged that Belgum assumed the risk of his injuries and, in any event, Belgum's injuries were caused by the intervening negligence of Belgum's employer and by Belgum's own contributory negligence. In a trial before a jury, appellees moved for a directed verdict at the close of Belgum's evidence. The court granted appellees' motion, stating orally that even if appellees had breached a duty owed Belgum, Belgum failed to show appellees' negligence was a proximate cause of his injuries.

Belgum timely appealed, setting out four assignments of error, which may be consolidated into three, alleging that the trial court erred (1) in finding that appellees' contract with the owner did not create a duty on the part of appellees to ensure the safety of the workers, (2) in finding that appellees' professional standard of care was different from that shown in the evidence offered by Belgum's experts, and (3) in finding that

the acts and omissions of appellees were not the proximate cause of Belgum's injuries as a matter of law.

On appeal from the granting of a motion for a directed verdict, the Supreme Court reviews the evidence in the light most favorable to the party against whom the motion is directed, and that party is entitled to have all controverted facts resolved in his favor and to have the benefit of all inferences which can reasonably be drawn from the evidence. *Stoco, Inc. v. Madison's, Inc.*, 235 Neb. 305, 454 N.W.2d 692 (1990).

The record shows the following facts as resolved in favor of Belgum. Peters had prepared the specifications, bids, and various contracts on the mall project for Kawamoto and had visited the construction site at least monthly. The contract between Kawamoto and the owner of the building provided, in part:

> The Architect shall not have control or charge of and shall not be responsible for construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work, for the acts or omissions of the Contractor, Subcontractors or any other persons performing any of the Work, or for the failure of any of them to carry out the Work in accordance with the Contract Documents.

There was testimony that architect-owner contracts before 1976 gave the architect authority to stop construction work, but after 1976, that authority was taken from the architect and given to the owner, while the architect was given "authority to reject Work which does not conform to the Contract Documents."

When Peters was at the construction site in November or December 1985, a superintendent for a dry wall subcontractor also working on the mall told Peters that the scaffold, which had been rented and primarily used by Harris, was shaky and substandard. In December 1985, the same superintendent informed Peters that the scaffold was deficient and without "any safety ends." No guardrails were affixed to the scaffold following these conversations.

On the morning of January 22, 1986, Belgum was performing masonry work approximately 15 to 18 feet above

the ground on an outrigger section of the scaffold. The scaffold was positioned next to a building wall that was under construction at the time. The scaffold was not in any way attached or tied to the wall, nor were there any guardrails or toeboards on the scaffold. The outrigger on which Belgum was working before the accident consisted of a triangular brace attached to the scaffold, with two planks laid across it. Belgum had been standing on the planks marking off hangers on the wall in preparation for brickwork just before he fell. Three witnesses observed Belgum as he fell to the ground, but did not see the start of the fall.

Peters had been on the scaffold within a week before the accident. The scaffold on that day, like on the day of the accident, was open ended. Peters testified by deposition that he did not observe any guardrails or toeboards on the scaffold. The lack of guardrails constituted violations of industry standards, Occupational Safety and Health Administration standards, and the local building code. Peters admitted he did not inquire into whether safety precautions were being met because he did not consider himself qualified to advise on safety matters. Peters was not a licensed architect, but considered himself an architectural technician. He stated he was unaware of OSHA requirements on safety and unfamiliar with the industry standards concerning scaffolding. Peters testified that he felt it was the responsibility of the individual contractors to take care of safety.

Other testimony showed that during the 2¹/₂ months before the accident, the project manager for the contractor, the site superintendent for the contractor, and the owner of the masonry company which furnished the scaffold had discussions concerning complaints about the scaffolding. The project manager testified that he relied on the site superintendent to see that the problem was corrected. The site superintendent testified that he told the owner of the masonry company during the course of the project to affix guardrails to the scaffold, but it was never done. The city building inspector, who had authority to stop work if he saw safety deficiencies, testified that he was at the construction site two to three times a day, but that he never noticed the unsafe scaffold.

With respect to Belgum's first two assignments of error, we will assume, as the trial court specifically did, that appellees owed a duty to Belgum. The situation presented in this case is far different from the facts in *Simon v. Omaha P. P. Dist.*, 189 Neb. 183, 202 N.W.2d 157 (1972), relied on by Belgum. In the *Simon* case, the architect had accepted a substantial obligation on safety matters not only by written contract, but by the architect's supervisory conduct. The *Simon* architect acted as onsite supervisor of the construction project and assumed the responsibility for conducting safety meetings and daily safety inspections throughout the course of the construction project in that case.

Nonetheless, we assume, without deciding, that the evidence shows that appellees owed a duty to Belgum in this case.

Belgum contends:

> It was the failure of the architect in allowing this unsafe condition to exist and by failing to warn the owner and others of unsafe conditions and by failing to perform the architect's supervisory activities in a reasonable manner which resulted in the unsafe condition being present on the morning of January 22, 1986, which unsafe condition caused Mr. Belgum's fall.

Brief for appellant at 27-28.

Assuming appellees breached the standard of care required by the architectural community, it is fundamental in a negligence action that Belgum establish that appellees' negligence is the proximate cause of the damage sued upon. See *Shibata v. College View Properties*, 234 Neb. 134, 449 N.W.2d 544 (1989).

Proximate cause is that cause which, in a natural and continuous sequence, unaccompanied by any efficient intervening cause, produces the injury, and without which the result would not have occurred. *Worth v. Schillereff*, 233 Neb. 628, 447 N.W.2d 480 (1989). We have phrased proximate cause another way, in terms of three requirements. The first requirement is that the negligence be the cause in fact or be such that without it the injury would not have occurred, commonly known as the "but for" rule. The second requirement is that the injury be the natural and probable result of the negligence. The

third requirement is that there be no efficient intervening cause. See *Worth v. Schillereff, supra.*

Ordinarily, the determination of proximate cause is a matter for the trier of fact. *Kumar v. Douglas County*, 234 Neb. 511, 452 N.W.2d 21 (1990). The reason the issue of proximate cause was not submitted to the jury in this case is that Belgum did not prove by a preponderance of the evidence that appellees' negligence was the proximate cause of his injury.

In defining "efficient intervening cause," we stated in *Shelton v. Board of Regents*, 211 Neb. 820, 825, 320 N.W.2d 748, 752 (1982):

An efficient intervening cause is a new and independent force which breaks the causal connection between the original wrong and the injury. *Coyle v. Stopak, supra.* In *Coyle, supra* at 606-07, 86 N.W.2d at 768, we further said: " 'The causal connection is broken if between the defendant's negligent act and the plaintiff's injury "there has intervened the negligence of a third person who had full control of the situation and whose negligence was such as the defendant was not bound to anticipate and could not be said to have contemplated, which later negligence resulted directly in the injury to the plaintiff." ' "

The record in this case contains much evidence with regard to intervening acts of negligence of others. Other individuals had "full control of the situation." The project manager, site superintendent, and masonry subcontractor were all aware of the unsafe nature of the scaffold before Belgum's accident occurred. In addition, the building inspector visited the site at least daily, but failed to notice the scaffold in its unsafe condition. We determine that these acts or omissions of others were sufficient to break the causal connection between any acts of the appellees and Belgum's injury, particularly in view of the fact that the architects had no authority to stop work on the job, which resulted in a situation where if appellees had given warnings to all concerned, it is only speculation to believe that such warnings would have been heeded.

On a defendant's motion for a directed verdict in a jury trial of a negligence action, the trial court must decide whether the defendant is guilty of negligence, and, if so, must then decide

whether evidence is such that only one reasonable conclusion is permissible. *Anderson v. Union Pacific RR. Co.*, 229 Neb. 321, 426 N.W.2d 518 (1988). If there is any evidence which will sustain a finding for the party against whom the motion was made, the case may not be decided as a matter of law. *Bray v. Kate, Inc.*, 235 Neb. 315, 454 N.W.2d 698 (1990). However, " '[w]hen reasonable minds can draw but one conclusion from the facts, the trial court must decide the issue as a matter of law and not submit it to a jury.' " *Elson v. Pool*, 235 Neb. 469, 471, 455 N.W.2d 783, 785 (1990). Based on the evidence provided at trial, we determine that the trial court acted properly in deciding the issue as a matter of law. Even if appellees were negligent, it cannot be said that appellees' alleged negligence was the proximate cause of Belgum's injury.

The judgment of the district court is affirmed.

AFFIRMED.