MIA M. VREDEVELD, APPELLANT, V. SCOTT R. CLARK, APPELLEE.

504 N.W.2d 292

Filed August 20, 1993.   No. S-91-243.

Kent A. Schroeder, of Ross, Schroeder & Brauer, for appellant.

Daniel M. Placzek, of Luebs, Beltzer, Leininger, Smith & Busick, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, and LANPHIER, JJ.

PER CURIAM.

This is an appeal by a plaintiff of a damages award in the district court for Hall County. Plaintiff, Mia M. Vredeveld, was a passenger in a car which was rear-ended by defendant, Scott R. Clark. The court granted plaintiff's motion for summary judgment as to liability and submitted to the jury the determination of damages proximately caused by defendant. The jury found for plaintiff in the amount of $5,000. Plaintiff appeals the damages awarded.

## STATEMENT OF FACTS

On August 23, 1986, at approximately 11 p.m., plaintiff and a friend, Lana Leitschuck, after going to a movie, were driving home in plaintiff's Corvette. Leitschuck was driving and

headed south on South Locust Street in Grand Island. As she arrived at Brookline Drive, she waited for the northbound traffic to clear so that she could make a left turn onto Brookline Drive. As she waited, another vehicle pulled up behind her. Shortly thereafter, defendant, also traveling southbound, approached in his vehicle and struck the vehicle immediately behind plaintiff's, pushing it into plaintiff's vehicle. Plaintiff, who was not wearing her seatbelt, testified that in response to Leitschuck's gasp immediately prior to the collision, she reached out to the dashboard with her right hand.

After the collision, plaintiff experienced stiffness in her neck and pain in the tops of her shoulders and the middle of her back. Plaintiff drove Leitschuck to plaintiff's house, and later, early Sunday morning, plaintiff went to the St. Francis Hospital emergency room. She was x-rayed and fitted with a cervical collar.

Plaintiff consulted her family physician, Dr. Sheridan Anderson, on August 26, because of persistent pain in her neck and across the top of her shoulders. Dr. Anderson diagnosed muscle strain and spasm in her neck. He prescribed pain medication and physical therapy. However, plaintiff began to experience pain in her right shoulder joint between August 27 and September 2. On September 2, plaintiff returned to Dr. Anderson's office, complaining of a resurgence of pain after attending a dance at her parents' home. At the recommendation of Dr. Anderson, plaintiff consulted Dr. Balachandran Wariyar, a neurologist, on October 1. In a letter to Dr. Anderson, Dr. Wariyar indicated that plaintiff had increasing problems with the right side of her shoulder and her neck "with the arm popping."

Dr. Wariyar found no nerve damage. On October 21, plaintiff drove to Iowa. Plaintiff testified that her right shoulder began to hurt as she drove to Iowa and that she was unable to complete the drive home. Plaintiff's neck pain began to subside by October 1986 and was resolved by March 13, 1987. Between October 28, 1986, and approximately November 27, 1989, plaintiff had consultations with, and treatments from, a number of specialists for her right shoulder pain. Dr. Matthew Reckmeyer, an orthopedic surgeon, treated plaintiff

on several occasions beginning in October 1986. In a letter he prepared after plaintiff's visit, Dr. Reckmeyer stated that plaintiff had not recalled any specific trauma to her shoulder. His treatments included physical therapy and injections in the shoulder to relieve the pain. Dr. Reckmeyer was apparently the first to diagnose plaintiff's condition as shoulder impingement syndrome. Subsequent consultations with other doctors supported the diagnosis. In October 1987, a Dr. Miller, consulted for a second opinion, performed an arthrography. Dye was injected into the problem area to assist in the diagnosis. A myelogram and a CAT scan were also done.

Plaintiff eventually had two surgeries to relieve the shoulder impingement syndrome. On November 17, 1988, Dr. Reckmeyer performed an arthroscopic shoulder decompression, a procedure in which a tube is inserted through a puncture wound into various areas of the shoulder joint. This procedure alleviated the pain for a short time, but the pain in plaintiff's right shoulder resumed. On August 22, 1989, a Dr. Lesiak, an orthopedic surgeon who had previously seen plaintiff for the same condition, performed an open shoulder decompression. This surgery required a 3- to 4-inch incision in plaintiff's shoulder.

Plaintiff was involved in other motor vehicle accidents on June 26, 1987, and May 11 and 19, 1990. There is no indication that plaintiff suffered any injuries from the June 26 accident. Dr. Lesiak saw plaintiff on May 24, 1990, because of the May 11 accident. Dr. Lesiak found that plaintiff had a second degree acromioclavicular joint separation, a separation in her shoulder.

On April 16, 1990, plaintiff filed the present action against defendant, requesting special damages in the amount of $14,883.12 and general damages. The trial court granted summary judgment against defendant as to liability and submitted the issues of proximate cause of the injuries and the amount of damages that plaintiff suffered, if any, to the jury. At trial, plaintiff offered expert testimony from orthopedic surgeon Bruce Claussen. Dr. Claussen examined plaintiff in November 1990. In explaining the injury to her shoulder, plaintiff told Dr. Claussen she had placed her arm on the

dashboard prior to impact. Dr. Claussen testified that plaintiff's history and physical findings were consistent with the diagnosis of continuing impingement syndrome and that the accident of August 23, 1986, was the proximate cause of the shoulder injury at issue in the trial. He found that plaintiff had suffered in the past from a grade II shoulder separation, but it had healed by the time he saw plaintiff. Defendant presented the videotaped deposition of Dr. John G. Yost. Dr. Yost saw plaintiff on November 29, 1990. He stated that as of November 29, plaintiff showed no evidence of a grade II shoulder separation or of true impingement syndrome. Dr. Yost diagnosed plaintiff as suffering from frozen shoulder. On January 25, 1991, the jury found for plaintiff in the amount of $5,000.

In this appeal, plaintiff claims the trial court erred in giving the jury instructions on intervening cause and failure to wear seatbelts for mitigation of damages; in failing to receive exhibits 25A, 25B, 25C, which were not listed in the pretrial order, and exhibit 63, an instructive video on arthroscopic surgery; in receiving into evidence exhibits 66 and 67, which were pictures of the vehicles involved in the accident; in failing to sustain plaintiff's motion in limine to exclude the pictures of the vehicles, motion for directed verdict against defendant as to proximate cause, motion for a new trial, motion for judgment notwithstanding the verdict, and motion for a protective order pursuant to Neb. Ct. R. of Discovery 26(b)(4)(C) (rev. 1992); and in failing to tax costs.

## DIRECTED VERDICT

After defendant rested, plaintiff moved for a directed verdict on the issue of proximate cause. If a motion for a directed verdict made at the close of all the evidence is overruled by the trial court, this court's review is controlled by the rule that a directed verdict is proper only where reasonable minds cannot differ and can draw but one conclusion from the evidence, where an issue should be decided as a matter of law. *Schleich v. Archbishop Bergan Mercy Hosp.*, 241 Neb. 765, 491 N.W.2d 307 (1992).

The party against whom the verdict is directed is entitled to

have every controverted fact resolved in his or her favor and to have the benefit of every inference which can reasonably be drawn from the evidence. If there is any evidence which will sustain a finding for the party against whom the motion is made, the case may not be decided as a matter of law. *Leonard v. Wilson*, 238 Neb. 1, 468 N.W.2d 604 (1991).

"Proximate cause" is that cause which, in a natural and continuous sequence, unaccompanied by any efficient intervening cause, produces injury, and without which the result would not have occurred. *Belgum v. Mitsuo Kawamoto & Assoc.*, 236 Neb. 127, 459 N.W.2d 226 (1990).

In resolving the proximate cause issue, this court is guided by the following principle: A plaintiff is not bound to exclude the possibility that the accident might have happened in some other way, but is only required to satisfy the jury, by a preponderance of the evidence, that the injury occurred in the manner claimed. *McVaney v. Baird, Holm, McEachen*, 237 Neb. 451, 466 N.W.2d 499 (1991).

Plaintiff claimed her shoulder impingement syndrome was proximately caused by the accident involving defendant. She offered the testimony of two doctors who stated the injury to her shoulder resulted from the 1986 accident. Triers of fact are not required to take opinions of experts as binding upon them. *Keystone Ranch Co. v. Central Neb. Pub. Power & Irr. Dist.*, 237 Neb. 188, 465 N.W.2d 472 (1991). Thus, we find that plaintiff was not entitled to a directed verdict, because determining the weight that should be given expert testimony is uniquely the province of the fact finder. See *In re Application A-16642*, 236 Neb. 671, 463 N.W.2d 591 (1990).

## JURY INSTRUCTIONS

### STANDARD OF REVIEW

In an appeal based on the claim of an erroneous instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. *Sikyta v. Arrow Stage Lines*, 238 Neb. 289, 470 N.W.2d 724 (1991).

In reviewing a claim of prejudice from instructions given or refused, the instructions must be read together, and if, taken as

a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and evidence, there is no prejudicial error necessitating reversal. *Behm v. Northwestern Bell Tel. Co.*, 241 Neb. 838, 491 N.W.2d 334 (1992); *Grote v. Meyers Land & Cattle Co.*, 240 Neb. 959, 485 N.W.2d 748 (1992).

### EFFICIENT INTERVENING CAUSE

Plaintiff claims that the evidence was insufficient to warrant an instruction on intervening cause. Defendant asserts in his brief that the instruction on intervening cause was correct because plaintiff's shoulder injury did not manifest itself until after the trip plaintiff took to Iowa.

An efficient intervening cause is a new and independent force which breaks the causal connection between the original wrong and the injury. *Belgum v. Mitsuo Kawamoto & Assoc., supra.*

After the accident, plaintiff initiated physical therapy for the strain and spasms in her neck. The physical therapy sessions consisted, in part, of upper extremity exercises. The exercises were performed on an upper body ergometer, otherwise referred to as a "bicycle for the arms." Plaintiff exercised her upper body on the ergometer on several dates throughout September. Although the duration and intensity were gradually increased, plaintiff did not complain of any pain in her shoulder during those sessions. The record reflects plaintiff did not complain of any shoulder pain during her physical therapy sessions until October 23, after the weekend trip she took to Iowa. When she sought treatment for the pain in her shoulder from Dr. Reckmeyer, she told him she could not recall any specific trauma to her shoulder. Specifically, she did not remember placing her arm on the dashboard prior to the accident with defendant, although that accident originally caused her cervical sprain.

The appearance of pain in plaintiff's right shoulder approximately 1 month after the accident, with no prior indication of injury to the shoulder, and plaintiff's own failure to remember the accident which caused severe pain in her neck and the tops of her shoulders, warranted the instruction on the intervening cause.

### SEATBELT INSTRUCTIONS

Plaintiff also claims the trial court erred in instructing the jury on nonuse of seatbelts for mitigation of damages because defendant provided no evidence regarding the causal relationship between the accident and the injuries plaintiff sustained. Neb. Rev. Stat. § 39-6,103.08 (Reissue 1988) provided:

> Evidence that a person was not wearing a seat belt at the time he or she was injured shall not be admissible in regard to the issue of liability or proximate cause, but may be admissible as evidence concerning mitigation of damages, except that it shall not reduce recovery for damages by more than five percent.

A number of states allow evidence of a plaintiff's failure to wear a seatbelt for mitigation of damages, but only when the defendant has demonstrated a causal connection between the plaintiff's failure to wear an available seatbelt and the damages sustained by the plaintiff. See, *Benner v. Interstate Container Corp.*, 73 F.R.D. 502 (1977) (instruction on nonuse of seatbelt for mitigation proper where expert testified plaintiff's injuries could have been avoided if she had worn seatbelt); *Law v. Superior Court of State of Ariz.*, 157 Ariz. 147, 755 P.2d 1135 (1988) (under comparative negligence statute, nonuse of seatbelt can be considered and used to reduce damages if nonuse either caused or enhanced injuries to plaintiff); *Foley v. City of West Allis*, 113 Wis. 2d 475, 335 N.W.2d 824 (1983) (failure to wear seatbelts not negligence per se, but proper to instruct jury where seatbelts are available and evidence indicates causal relationship between injuries sustained and failure to wear seatbelts). See, also, *Knapp v. Shores*, 550 So. 2d 1155 (Fla. App. 1989) (error to instruct jury on seatbelt defense in absence of evidence that seatbelts were fully operational); *Thomas v. Gottlieb*, 520 So. 2d 622 (Fla. App. 1988).

Although plaintiff testified at trial she was not wearing a seatbelt at the time of the accident, defendant presented no evidence demonstrating the injuries sustained by plaintiff which were attributable to her failure to wear the seatbelt in the rear-end collision. In *F. A. F. Motor Cars, Inc. v. Childers*, 181 Ga. App. 821, 354 S.E.2d 6 (1987), the defendants asserted that

the trial court had erred in failing to charge the jury with the requested seatbelt charge. The appellate court found it proper for the trial court to refuse to make the charge, even though the plaintiff had testified she was not wearing a seatbelt. The court reasoned that the defendants had not introduced evidence connecting the injuries of the plaintiff with her failure to wear a seatbelt.

> Thus, [defendants'] requested charge, which would have instructed the jury not to award any amount for injuries and damages sustained which were proximately caused by [plaintiff's] failure to wear a seat belt, was not adjusted to the evidence and the trial court did not err by refusing to so charge.

*Id*. at 822, 354 S.E.2d at 8.

Here, the instruction given to the jury on failure to wear a seatbelt for mitigation of damages required the jury to reduce damages if defendant proved that plaintiff was not wearing her seatbelt and that plaintiff's injuries would have been less if she had been wearing her seatbelt. However, no evidence was presented regarding the extent to which the injuries to plaintiff would have been diminished had she been wearing a seatbelt. Submission of an issue on which the evidence is insufficient to sustain an affirmative finding is, generally, prejudicial and results in a new trial. *Jensen v. Archbishop Bergan Mercy Hosp.*, 236 Neb. 1, 459 N.W.2d 178 (1990). Since no evidence was provided indicating the causal relationship between plaintiff's failure to wear the seatbelt and the extent of injuries she sustained in the accident, the instruction was improper.

### PREJUDICIAL ERROR

In *Oberhelman v. Blount*, 196 Neb. 42, 241 N.W.2d 355 (1976), we found that although the jury had found for the plaintiff, it was prejudicial error for the trial court to have instructed the jury on contributory negligence where there was insufficient evidence to sustain an affirmative finding of contributory negligence, because the instruction allowed the jury to reduce damages due the plaintiff. In the instant case, the instruction on seatbelts was also prejudicial because it allowed the jury to reduce the amount of damages due plaintiff. See *id*.

## MOTION IN LIMINE

Plaintiff assigns as error the trial court's failure to exclude exhibits 66 and 67 because they were irrelevant. Exhibit 66 consists of an enlarged photograph taken of the back end of plaintiff's Corvette after the accident. Exhibit 67 is an enlarged photograph taken of the front end of the vehicle that was forced into the rear of the Corvette. The photographs depict the minor damage sustained by the vehicles during the accident.

### STANDARD OF REVIEW

In all proceedings where the Nebraska Evidence Rules apply, admissibility of evidence is controlled by the Nebraska Evidence Rules, not judicial discretion, except in those instances under the Nebraska Evidence Rules when judicial discretion is a factor involved in admissibility of evidence. *Behm v. Northwestern Bell Tel. Co.*, 241 Neb. 838, 491 N.W.2d 334 (1992). See, also, *State v. Messersmith*, 238 Neb. 924, 473 N.W.2d 83 (1991). Thus, this court reviews a trial court's ruling on the admissibility of evidence for an abuse of discretion only where the Nebraska Evidence Rules permit judicial discretion in assessing admissibility. *Behm v. Northwestern Bell Tel. Co., supra.*

### EXHIBITS 66 AND 67

Rule 403 of the Nebraska rules of evidence provides the trial court with the discretion to exclude evidence, although it is relevant, if it is unfairly prejudicial. Neb. Rev. Stat. § 27-403 (Reissue 1989).

Prior to trial, plaintiff filed a motion in limine to exclude any evidence of damage to plaintiff's vehicle as irrelevant and to exclude such evidence even if relevant because "its probative value is substantially outweighed by the danger of unfair prejudice." The trial court overruled the motion, and the exhibits were introduced at trial.

No abuse of discretion is evident from the record. In his amended answer, defendant denied the injuries were of the extent and nature alleged by plaintiff. The question presented, then, is whether defendant's negligence in striking plaintiff's vehicle proximately caused all the injuries of plaintiff.

A similar situation arose in *Springer v. Smith*, 182 Neb. 107,

153 N.W.2d 300 (1967). In *Springer*, the defendant's vehicle rear-ended the plaintiff's vehicle. The plaintiff initiated a lawsuit against the defendant, who admitted the accident, but denied the injuries were of the nature and extent alleged in the plaintiff's petition. At trial, photographs of the automobiles and the parties were admitted. The defendant argued that the photographs were admitted to show the force of the collision and thus were immaterial, because he had admitted negligence and that negligence was the proximate cause of the accident. This court found that because the defendant disputed the claimed injuries of the plaintiff, the photographs were relevant to show the nature and the contact of the force. The court stated, "To have refused to admit them would deny to the jury evidence helpful in resolving the issue of the injuries the plaintiff sustained and their nature and character." *Id.* at 110, 153 N.W.2d at 302.

In the case at hand, the trial court did not abuse its discretion in admitting into evidence the photographs of two of the vehicles involved in the accident. Dr. Lesiak testified that the severity of the impact to plaintiff's vehicle is significant because the amount of energy absorbed at impact determines the nature and the extent of the injury. Dr. Claussen also stated that "the younger the person is the more severe a jolt it would have to be to cause an impingement syndrome." As in *Springer*, the photographs were relevant to show force of impact, which in turn could assist the trier of fact in ascertaining the injuries plaintiff sustained.

## EXHIBITS 25A, 25B, 25C, AND 63

There is no merit in plaintiff's assignment of error that the trial court erred in not admitting exhibits 25A, 25B, 25C, and 63. Plaintiff does not discuss the assignment of error in regard to exhibit 63 in her brief, and therefore, we will not discuss it. To be considered by the Supreme Court, an error must be assigned *and discussed* in the brief of one claiming that prejudicial error has occurred. *Regency Homes Assn. v. Egermayer*, 243 Neb. 286, 498 N.W.2d 783 (1993); *Carlson v. Zellaha*, 240 Neb. 432, 482 N.W.2d 281 (1992).

The first three exhibits in question consisted of three

drawings prepared by Dr. Claussen. Prior to trial the parties produced a number of exhibits which were marked and identified by stipulation of the parties. The trial judge's pretrial notes state: "If, additional exhibits or documents are discovered, the party intending to use them shall immediately exhibit them to opposing counsel, and submit them to the court to be marked for identification . . . Failure to comply, except for good cause shown, will make such exhibit inadmissible."

Exhibit 25 was listed among those exhibits to which the parties might object. Plaintiff's exhibit list described exhibit 25 in the following manner: "Dr. Bruce Claussen will use during the course of trial for purposes of medical illustration props, models, diagrams, charts and other aids." Defendant's counsel had been given exhibit 25 to examine prior to trial. By introducing additional exhibits without submitting them to defendant's counsel, plaintiff subjected herself to the penalty provided by the pretrial agreement, to wit, the exclusion of the offered exhibits.

## EXPERT FEES

Plaintiff assigns as error the trial court's failure to assess the costs of the expert witnesses to defendant.

In *Hefti v. Hefti*, 166 Neb. 181, 88 N.W.2d 231 (1958), this court stated that expert witness fees could be taxed above the statutory fee where a special contract existed. In *Lockwood v. Lockwood*, 205 Neb. 818, 290 N.W.2d 636 (1980), this court upheld the taxing of expert witness fees to the husband in a divorce action. It found evidence of a contract where the expert testified he had been employed by the wife to examine certain financial documents furnished to the wife by the husband in preparation for the trial, he had testified to the value of his services, and these documents and the expert's testimony were accepted into evidence at trial. In *Hefti* and *Lockwood*, costs for expert witness fees were permitted pursuant to Neb. Rev. Stat. § 42-367 (Reissue 1988) and its predecessor, which permit a court to direct costs against either party involved in a divorce action. These cases are thus distinguishable from the present case. The court did not err in refusing to tax expert witness fees to defendant.

## PROTECTIVE ORDER

The next assignment of error is that the trial court erred in denying plaintiff's motion for a protective order for her medical records retained by the offices of Dr. Wariyar. Dr. Wariyar examined plaintiff for the pain in her shoulder at the recommendation of Dr. Anderson. Plaintiff testified that she had seen Dr. Wariyar before that time. Defendant apparently filed a notice of medical records deposition, although the record only contains plaintiff's motion for a protective order concerning the medical records held by Dr. Wariyar. In the motion, plaintiff requested the court to order the defendant to take a deposition of Dr. Wariyar "to determine whether or not physician-patient communications that occurred before the injury at issue are relevant to the conditions complained of in the pending action."

Neb. Rev. Stat. § 27-504 (Cum. Supp. 1990) grants a physician-patient privilege to a person seeking medical treatment. Section 27-504(4)(c) waives the privilege in certain circumstances: "There is no privilege under this rule as to communications *relevant* to an issue of the physical, mental, or emotional condition of the patient in any proceeding in which he or she *relies upon the condition* as an element of his or her claim or defense." (Emphasis supplied.)

Courts have generally held that filing a personal injury claim waives the physician-patient privilege as to all the information concerning the health and medical history relevant to the matters which plaintiff has put at issue. See, *State ex rel. Pierson v. Griffin*, 838 S.W.2d 490 (Mo. App. 1992); *Nelson v. Lewis*, 130 N.H. 106, 534 A.2d 720 (1987); *Clark v. District Court, Second Jud. Dist.*, 668 P.2d 3 (Colo. 1983); *Trans-World Investments v. Drobny*, 554 P.2d 1148 (Alaska 1976); *State ex rel. Calley v. Olsen*, 271 Or. 369, 532 P.2d 230 (1975). But see, *State ex rel. Mapes v. District Court*, 250 Mont. 524, 822 P.2d 91 (1991) (plaintiff waives her physician-patient privilege to the extent necessary for the defendant to discover whether plaintiff's current condition is the result of some other cause). However, medical records or information which is unrelated to the condition at issue and irrelevant to the cause of action remains privileged. *Canfield v. Sandock*, 563 N.E.2d 526 (Ind.

1990); *Trans-World Investments v. Drobny, supra; State ex rel. Calley v. Olsen, supra.*

Defendant's motion is not within the record, and therefore, it is not possible to determine whether defendant asserted that the medical records contained evidence upon which he wished to rely for his defense or whether defendant's request for the records was reasonably calculated to lead to the discovery of admissible evidence pursuant to Neb. Ct. R. of Discovery 26(b)(1) (rev. 1992).

## CONCLUSION

The trial court was correct in denying plaintiff's motion for directed verdict on the issue of proximate cause of plaintiff's injuries and in its evidentiary rulings. Plaintiff is entitled to a new trial because the seatbelt instruction was prejudicial to plaintiff. The cause is remanded to the lower court for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

SHANAHAN, J., not participating.

LANPHIER, J., concurring.

I do not agree with the majority's decision that a directed verdict cannot be granted when there is expert testimony offered into evidence. Furthermore, I would not have permitted the instruction on intervening cause.

## DIRECTED VERDICT

I disagree with the majority decision to the extent that it holds that the testimony of an expert witness, without more, serves to preclude a directed verdict. This court has held that where there is evidence from expert testimony, a directed verdict should not be granted, because the trier of fact must weigh the evidence and resolve the contradiction. See, *Cassio v. Creighton University*, 233 Neb. 160, 446 N.W.2d 704 (1989); *Lane v. State Farm Mut. Automobile Ins. Co.*, 209 Neb. 396, 308 N.W.2d 503 (1981). However, where there is uncontroverted evidence and the court determines that reasonable minds can draw but one conclusion from the evidence, the introduction of expert testimony, alone, should

not bar the court from granting a directed verdict in favor of the plaintiff. If the court can grant a directed verdict where there is uncontroverted lay testimony, there is no reason to apply a different standard to expert testimony.

A directed verdict is proper where reasonable minds can draw but one conclusion from the evidence. There is no reason to exempt cases involving expert testimony from this rule. If, in light of all the evidence, including testimony, the trial court finds that a directed verdict is warranted because reasonable minds cannot differ and can draw but one conclusion from the evidence, the fact that the evidence includes expert testimony should not bar the directed verdict.

Verdicts cannot be based solely on possibility, conjecture, or speculation. *Wessel v. City of Lincoln*, 145 Neb. 357, 16 N.W.2d 476 (1944). See, also, *Mustion v. Ealy*, 201 Neb. 139, 266 N.W.2d 730 (1978). In holding that the mere presence of expert testimony prevented a directed verdict for plaintiff, this court permits a jury to entertain defendant's theory, although it has no basis in the evidence.

## EFFICIENT INTERVENING CAUSE

As to the instruction on intervening cause, I believe this is the "appropriate time" and "appropriate case," as stated in *Mundt v. Northwestern Bell Tel. Co.*, 230 Neb. 192, 197, 430 N.W.2d 530, 533 (1988), in which this court should allow the intervening cause instruction to "pass from the scene," *id*. In *Mundt*, we found that the trial court had committed error in failing to give an instruction on intervening, or superseding, cause, partly because the phrase "intervening cause" was included in the proximate cause instruction. Failure to define "intervening cause" therefore constituted error. In addition, the defendant had pled the issue of intervening cause and introduced facts which justified giving the instruction to the jury.

The proximate cause instruction given to the jury in this case does not contain the words "intervening cause." It states: "A proximate cause is a cause that produces a result in a natural and continuous sequence and without which the result would not have occurred." In addition, no facts were introduced which would require the instruction on intervening cause.

The Nebraska Supreme Court Committee on Civil Practice and Procedure suggests that the instruction on proximate cause, NJI2d Civ. 3.41; the instruction on concurring cause, NJI2d Civ. 3.42; and the instruction on the conduct of a nonparty third person as the sole and proximate cause, NJI2d Civ. 3.44, are sufficient instruction for the jury. NJI2d Civ. 3.43 comment. The committee recommends that the instruction on superseding or efficient intervening cause be treated as part of the plaintiff's proof of proximate cause or concurring cause.

> The plaintiff must prove that the incident under litigation was "a" proximate cause of his or her injury. When the trier of fact decides that a "superseding" cause is "the" proximate cause, it has decided that the plaintiff has not met this burden of proof, has not proved that the incident under litigation was "a" proximate cause. Approaching it from the other direction, the plaintiff has the burden of proving that the defendant's acts were a proximate cause; if the plaintiff does that, then he or she has proved that subsequent acts were not the sole proximate cause. If there was a so-called superseding cause, then the act under litigation was not a proximate cause. However you look at it, the burden is on the plaintiff.

NJI2d Civ. 3.43 comment at 185.

I agree with the committee that superseding or efficient intervening cause should be considered as part of a plaintiff's proof of proximate cause. Furthermore, the instruction on intervening cause in this case was unnecessary and prejudicial. By instructing the jury on intervening cause, the court allowed the jury to absolve defendant of his liability regarding the shoulder impingement syndrome because of defendant's totally unsubstantiated theory regarding the occurrence of an accident in October 1986.

WHITE, J., joins in this concurrence.