VERNON E. MCWHIRT, APPELLEE, V. MICHAEL W. HEAVEY ET AL., APPELLANTS.

550 N.W.2d 327

Filed July 12, 1996.  No. S-94-589.

Francis T. Belsky, of Katskee, Henatsch & Suing, for appellants.

Thomas C. Emery, of Emery, Nye, Blazek, & Hemphill, for appellee.

WHITE, C.J., FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

WHITE, C.J.

This is a legal malpractice action brought by the plaintiff-appellee, Vernon E. McWhirt (McWhirt), for damages resulting from the alleged negligence of the defendants-appellants, Michael W. Heavey, individually; Michael W. Heavey, P.C., a Nebraska professional corporation; and Dwyer, Wood, Heavey & Grimm, a partnership. A jury returned a verdict in favor of McWhirt and awarded him $91,000, and the trial court entered a judgment accordingly. The defendants appeal.

The appellants assign the following errors: (1) The trial court erred in overruling the appellants' motions for directed verdict and for judgment notwithstanding the verdict and in submitting the case to the jury because McWhirt failed to adduce evidence pertaining (a) to the standard of care and the appellants' violation thereof, (b) to proximate causation, and (c) to damages; (2) the trial court erred in overruling the appellants' motion for summary judgment; (3) the trial court erred in overruling the appellants' demurrer ore tenus; and (4) the trial court erred in overruling the appellants' motion for new trial. We affirm.

On May 17, 1988, Florence McWhirt filed the underlying dissolution action against McWhirt. On May 20, McWhirt employed Heavey of Dwyer, Wood, Heavey & Grimm to represent his interests during the dissolution action. The dissolution action was scheduled for trial on November 23.

The contested issues in the divorce proceedings were (1) the division of real and personal property, (2) child support, (3) alimony, and (4) the characterization of approximately $41,000 in cash and property which McWhirt had inherited from his parents during the course of his marriage.

At the time of the divorce, the McWhirts had been married for 24 years. They had three children, two of whom had reached the age of majority. Custody of their 15-year-old son was awarded to Florence McWhirt.

Both parties were employed. McWhirt was earning $14.42 per hour. He also had a pension valued at $8,184. At the time of the divorce, Florence McWhirt was earning $4.80 per hour. The parties owned a $50,000 home. McWhirt had inherited property from his parents originally valued at $41,669.69. This property included an insurance policy, savings bonds, money, and other personal property. McWhirt testified that at the time of the divorce trial, this property was valued at approximately $37,537.39.

Close to the time the McWhirts separated, McWhirt recorded some of Florence McWhirt's phone conversations and placed a voice-activated tape recorder in their bedroom while he was out of town. McWhirt suspected that his wife was having an affair. After discovery of the recording devices, Florence McWhirt's counsel made threatening remarks about criminal prosecution for wiretapping.

The parties in the case at bar provided different versions at trial of how Heavey acted in his representation in the McWhirts' divorce. According to McWhirt, he met with Heavey on November 21, 1988, to discuss the dissolution proceedings that were to take place 2 days later. At this meeting, Heavey told McWhirt that he was going to present as an exhibit McWhirt's answers to the interrogatories requested by Florence McWhirt's counsel. This was the only exhibit that Heavey prepared for trial. Heavey told McWhirt that he would call him as a witness. Heavey never prepared McWhirt to be a witness. Heavey told McWhirt that he would cross-examine Florence McWhirt on her testimony if necessary. Heavey also told McWhirt that he should not worry about wiretapping threats.

At this meeting, Heavey failed to discuss and advise McWhirt as to (1) alimony obligations, (2) child support obligations, (3) disposition of the family residence, (4) disposition of McWhirt's inheritance property, (5) valuation of McWhirt's pension, (6) McWhirt's potential obligation to pay his wife's attorney fees, or (7) any other pertinent matters. Heavey did not inform him of what to expect at the trial.

McWhirt concedes that prior to this meeting Heavey and he did discuss his inheritance. He also concedes that Heavey informed him that inherited property is ordinarily set off from the marital property and granted to the recipient.

According to McWhirt, on the morning of November 23, the day of the trial, McWhirt met Heavey at the courthouse about an hour before the trial was to begin. At this time, Florence McWhirt's counsel presented Heavey and McWhirt with a proposal for settlement. McWhirt had not had any prior discussions of how the case should be settled.

Under the proposal, among other things, Florence McWhirt was to receive the house, and McWhirt was to pay a $20,000 lump-sum property distribution and $500 per month in alimony for Florence McWhirt's lifetime. Upon remarriage, the alimony would not terminate but could be considered by a court pursuant to an application to modify. McWhirt was also to pay $340 per month for child support. Florence McWhirt was also to receive a significant portion of the personal property that McWhirt inherited from his parents in the division of the parties' estate.

While McWhirt and Heavey were reviewing the proposal, Florence McWhirt's counsel approached them and mentioned the recording devices. Heavey told McWhirt not to be concerned with this because he did not think it was pertinent to the case.

After reviewing the proposal that morning, McWhirt thought "there was considerable amounts of inheritance property, inheritance money included in marital property." McWhirt then stated to Heavey, "I thought they could not include inheritance properties and monies and personal properties inherited into a marital property." Heavey responded by stating, "I didn't think they could." Heavey told McWhirt not

to worry about the personal property or inheritance money because alimony was a larger concern.

In discussing the alimony provision, McWhirt asked Heavey, "Is this right that they can award her alimony for life?" Heavey responded, "I don't know." Heavey said he would go find an attorney he knew who was at the courthouse and ask him. Heavey returned and told McWhirt that Judge Reagan, the presiding judge, often grants lifetime alimony. McWhirt had previously briefly discussed alimony with Heavey at an earlier date. At that time, Heavey told McWhirt that he would not have to pay alimony for a very long period and that the payment would not be very much in value.

McWhirt and Heavey discussed the settlement proposal further, and McWhirt then asked Heavey, "Well, what do you think about this?" According to McWhirt, Heavey responded, "I don't know, you know. . . . It's kind of up to you. We could go into trial. You could do worse. You could do better. . . . I'm not sure. It's kind of up to you."

Florence McWhirt's counsel then approached them and offered to reduce the lump-sum payment to $10,000 and the lifetime alimony payments to $400 per month. When his case was called, McWhirt again asked Heavey what he thought of the proposal and received no clear response. McWhirt testified that he then stated to Heavey, "Might as well accept this, if you think this is the best we can do." McWhirt subsequently accepted the settlement proposal with the modifications in the lump-sum payment and alimony.

Heavey's testimony conflicted with McWhirt's testimony in several respects. According to Heavey, he had several contacts with McWhirt prior to the trial, but he did not record all of these conversations on his billing statements. Heavey engaged in 7 hours of preparation for the trial; he prepared several trial exhibits but discarded them after the trial; he advised McWhirt concerning the possibility of having to pay alimony and the specific amount he would have to pay; and he told McWhirt that the settlement proposal was close to a "worst case scenario." Heavey claims he would have preferred to try the case and told McWhirt that he could probably do better at trial.

During the trial, Heavey did not present any evidence. Florence McWhirt's counsel gained admission of several exhibits pertaining to the child support calculations and documents regarding the property to be allocated to McWhirt and Florence McWhirt. At one point, the court asked McWhirt to acknowledge the settlement as the agreement that the parties negotiated and voluntarily entered. McWhirt made this acknowledgment. The court then found that the agreement was not unconscionable and approved the agreement.

McWhirt called Heavey within a few days after the trial and inquired whether the settlement could be set aside. Heavey referred McWhirt to another attorney.

McWhirt's new counsel filed an objection to the decree and a motion for new trial. On December 23, 1988, the court overruled the objection and motion. On appeal, this court affirmed the judgment of the trial court. *McWhirt v. McWhirt*, 236 Neb. xxii (1991).

On November 21, 1990, McWhirt filed this action. In his petition, McWhirt alleged that Heavey failed to exercise the knowledge, skill, and ability ordinarily possessed by members of the legal profession. He alleged that Heavey was negligent (1) in failing to prepare McWhirt to be a trial witness in his own divorce case, (2) in failing to prepare for the divorce trial, (3) in failing to exercise a reasonable degree of care and skill in negotiating a property settlement agreement, (4) in failing to know Nebraska law regarding inherited property and alimony, (5) by advising McWhirt that the trial judge ordinarily awarded alimony for life, and (6) by advising McWhirt that the trial result might be worse than the final proposed settlement offer.

On December 21, 1993, the appellants filed a motion for summary judgment. A hearing on this motion was held on January 13, 1994, where 10 exhibits were received into evidence. This evidence included depositions of McWhirt, Heavey, and Jerome Ortman, McWhirt's expert witness. On January 28, the appellants' motion was overruled.

Trial began on March 28, 1994. Heavey's counsel demurred ore tenus, contending that (1) the petition failed to state any cause of action in negligence against the appellants, (2) no

damages were cognizable under the law, (3) the allegations were not alleged as the proximate cause of any damages. The court overruled the motion.

McWhirt's expert witness, Ortman, is an attorney who has practiced law in Omaha, Nebraska, for 24 years. Approximately 50 percent of his practice consists of domestic relations cases.

In his testimony, Ortman first described the divorce process and divorce law in Nebraska. Regarding nonmarital property, Ortman testified that the general rule in Nebraska is that property inherited by one party of the marriage is considered to be outside the marital estate and set off for the party that inherited the property. He also testified that lifetime alimony is not favored in Nebraska.

Ortman recited the specific documents of the McWhirt divorce he reviewed in preparation of his testimony. Ortman was then asked to provide his opinions concerning different aspects of the McWhirt divorce.

Ortman specifically stated on numerous occasions, without objection, that it was his opinion that Heavey's conduct fell below the requisite standard of care. Ortman's opinions as to Heavey's specific deviations from the standard of care included, among other things, failure to prepare a child support worksheet, failure to prepare an exhibit identifying marital property, failure to obtain a real estate appraisal, failure to properly prepare for trial, failure to advise McWhirt concerning alimony and improper advice regarding lifetime alimony, and failure to advise McWhirt to reject the property settlement proposal. He also testified that it was his opinion that Heavey committed legal malpractice.

Ortman was also asked to respond to a hypothetical involving a factual situation that reflected the McWhirts' situation at the time of divorce. He testified as to how he would represent his client under the hypothetical. He gave his opinion as to the reasonable and probable outcome of a trial involving the hypothetical. He gave his opinion as to how much alimony would be awarded to the wife under the hypothetical. Ortman testified that the payment period would be between 2 to 3 years at a minimum and approximately 10 years at a maximum. He tes-

tified that if the court required payment for 2 to 3 years, the monthly payment would be approximately $400 per month. Ortman testified that if the court decided to spread out the obligation over 10 years, the payment would be approximately $200 per month.

Ortman also testified that under this hypothetical, he was of the opinion that the property inherited by the husband would be considered by the court as a nonmarital asset and would be set off to the husband outside the award of marital property. He testified that he was of the opinion that a court would divide the marital property evenly between the husband and wife. Ortman was also of the opinion that the husband would be required to pay some of the wife's attorney fees.

In summing up his testimony, Ortman testified that it was his opinion that in Heavey's representation of McWhirt, Heavey deviated from the standard of care required of domestic relations lawyers in the area in which Heavey practiced.

McWhirt also presented the expert testimony of Dennis Sullivan, an actuarial scientist. The parties stipulated that he was an expert. Sullivan testified as to the present value of McWhirt's pension. Sullivan also testified regarding the excess alimony McWhirt was paying when comparing his current payment with the alimony payment possibilities presented during Ortman's testimony. Exhibits were admitted to support Sullivan's testimony.

The appellants moved for a directed verdict at the close of McWhirt's case in chief and at the close of all of the evidence. These were overruled by the court. On April 7, 1994, the appellants filed a motion for judgment notwithstanding the verdict and a motion for new trial. These motions were overruled, and this appeal followed.

As previously mentioned, the appellants assign errors as to the court's denial of (1) summary judgment, (2) demurrer ore tenus, (3) directed verdict, (4) judgment notwithstanding the verdict, and (5) new trial.

Preliminarily, we can summarily dispose of the appellants' assignments of error regarding their motion for summary judgment, demurrer ore tenus, and motion for new trial. These were not discussed with any particularity in the briefs. The

appellants' brief did not contain any legal or factual discussion regarding these motions.

Errors assigned but not argued will not be addressed. *Jirkovsky v. Jirkovsky*, 247 Neb. 141, 525 N.W.2d 615 (1995). Therefore, we will not address these motions and will address only the assigned errors regarding directed verdict and judgment notwithstanding the verdict.

With regard to overruling a motion for directed verdict made at the close of all of the evidence, appellate review is controlled by the rule that a directed verdict is proper only where reasonable minds cannot differ and can draw but one conclusion from the evidence, where an issue should be decided as a matter of law. *Lindsay Mfg. Co. v. Universal Surety Co.*, 246 Neb. 495, 519 N.W.2d 530 (1994). A trial court should direct a verdict as a matter of law only when the facts are conceded, undisputed, or such that reasonable minds can draw but one conclusion therefrom. *Nickell v. Russell*, 247 Neb. 112, 525 N.W.2d 203 (1995).

The party against whom the verdict is directed is entitled to have every controverted fact resolved in his or her favor and to have the benefit of every inference which can reasonably be drawn from the evidence. If there is any evidence which will sustain a finding for the party against whom the motion is made, the case may not be decided as a matter of law. *Id.*

In order to sustain a motion for judgment notwithstanding the verdict, the court resolves the controversy as a matter of law and may do so only when the facts are such that reasonable minds can draw but one conclusion. *Critchfield v. McNamara*, 248 Neb. 39, 532 N.W.2d 287 (1995).

On a motion for judgment notwithstanding the verdict, the moving party is deemed to have admitted as true all the material and relevant evidence admitted which is favorable to the party against whom the motion is directed, and, further, the party against whom the motion is directed is entitled to the benefit of all proper inferences deducible from the relevant evidence. *Id.*

The appellants contend that they were entitled to judgment as a matter of law because McWhirt's acceptance of the settlement proposal is an absolute bar to a subsequent profes-

sional negligence action against his or her attorney. This argument is supported by the appellants' contention that pretrial settlement claims should be encouraged by the courts.

This court has never previously had the opportunity to determine this precise issue. However, other jurisdictions have decided the issue.

The Supreme Court of Connecticut decided a case similar to the instant case. In *Grayson v. Wofsey, Rosen, Kweskin*, 231 Conn. 168, 169, 646 A.2d 195, 197 (1994), the Supreme Court of Connecticut addressed the issue of "whether a client who has agreed to the settlement of a marital dissolution action on the advice of his or her attorney may then recover against the attorney for the negligent handling of her case." The defendants in *Grayson* argued that the plaintiff was barred as a matter of law because the plaintiff entered an agreement to settle the marital dissolution action. The defendants argued that their contention was particularly appropriate because the court presiding over the dissolution action reviewed and approved the settlement agreement.

The court in *Grayson* held that "a client who has agreed to the settlement of an action is not barred from recovering against his or her attorney for malpractice if the client can establish that the settlement agreement was the product of the attorney's negligence." *Id.* at 177, 646 A.2d at 201. The court stated:

> We reject the invitation of the defendants . . . to adopt a rule that promotes the finality of settlements and judgments at the expense of a client who, in reasonable reliance on the advice of his or her attorney, agrees to a settlement only to discover that the attorney had failed to exercise the degree of skill and learning required of attorneys in the circumstances. "Although we encourage settlements, we recognize that litigants rely heavily on the professional advice of counsel when they decide whether to accept or reject offers of settlement, and we insist that the lawyers of our state advise clients with respect to settlements with the same skill, knowledge, and diligence with which they pursue all other legal tasks."

*Id.* at 174-75, 646 A.2d at 199 (quoting *Ziegelheim v. Apollo*, 128 N.J. 250, 607 A.2d 1298 (1992)).

We share this view espoused by the Supreme Court of Connecticut. To clarify, we support the implementation of policies and procedures that encourage fair and amicable pretrial settlements. See Neb. Rev. Stat. § 42-366 (Reissue 1993). However, "we decline to adopt a rule that insulates attorneys from exposure to malpractice claims arising from their negligence in settled cases if the attorney's conduct has damaged the client." *Grayson*, 231 Conn. at 175, 646 A.2d at 200.

Our holding is in accord with the majority of jurisdictions that have addressed this issue. See, *Malfabon v. Garcia*, 898 P.2d 107 (Nev. 1995); *Grayson v. Wofsey, Rosen, Kweskin, supra*; *Ziegelheim v. Apollo, supra*; *Fishman v. Brooks*, 396 Mass. 643, 487 N.E.2d 1377 (1986); *Edmondson v. Dressman*, 469 So. 2d 571 (Ala. 1985); *Cook v. Connolly*, 366 N.W.2d 287 (Minn. 1985). But see *Muhammad v. Strassburger, et al.*, 526 Pa. 541, 587 A.2d 1346 (1991).

Nor do we think that a different result is required because of the fact that the judge presiding over the dissolution proceedings approved the settlement agreement.

Pursuant to § 42-366(2), the terms of a settlement agreement "shall be binding upon the court unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties, on their own motion or on request of the court, that the agreement is unconscionable." However, in determining whether the proposed settlement meets the statutory requirement of conscionability, the trial judge has discretion to request the production of evidence on such issue, but has no affirmative duty to make such a request. See *Buker v. Buker*, 205 Neb. 571, 288 N.W.2d 732 (1980).

In *Buker*, this court stated, "It is the duty of the parties and their counsel to produce evidence on the issues before the court, and to place this duty on the trial judge would overstep the bounds of judicial propriety." *Id.* at 575-76, 288 N.W.2d at 735. The court's general inquiry pursuant to § 42-366(2) does not serve as a substitute for the diligent investigation and preparation for which counsel is responsible.

We note that this court has previously held that an attorney's failure to communicate an offer of settlement to a client does not constitute professional negligence unless the evidence establishes that the proposed settlement was not unconscionable. *Smith v. Ganz*, 219 Neb. 432, 363 N.W.2d 526 (1985). *Smith* involved an attorney's failure to communicate to his client a $25,000 settlement offer of a $147,000 marital estate. The plaintiff contended that the attorney's failure to communicate this offer was professional negligence because the plaintiff would have accepted the offer. The plaintiff's own expert witness, however, testified that the settlement offer was probably unconscionable. We concluded that without evidence that the settlement was not unconscionable and would have been accepted by the court, no action for malpractice existed because the plaintiff's acceptance would have been meaningless.

*Smith* is distinguishable from the case at bar. *Smith* involved the attorney's alleged failure to communicate the offer. In *Smith*, this court found that the attorney was following the guidelines as to what would be deemed by a court to be unconscionable. The case at bar, however, involves Heavey's alleged misrepresentations and lack of knowledge of divorce law as it pertained to the various settlement provisions offered by Florence McWhirt. Heavey's duty was not to determine whether the court would find the settlement conscionable, but, rather, to exercise the requisite knowledge and skill to competently advise his client of this settlement. The issue of conscionability is not determinative of this case.

In sum, the appellants were not entitled to judgment as a matter of law merely because of the fact that McWhirt agreed to the settlement.

The appellants also contend that the district court erred in overruling their motions for directed verdict and judgment notwithstanding the verdict because the evidence pertaining to the issues of negligence, proximate cause, and damages was insufficient as a matter of law and should not have been submitted to the jury.

"In a negligence case, a trial court should sustain a motion for directed verdict or for judgment notwithstanding the ver-

dict only when the evidence, viewed in the light most favorable to the party against whom the motion is directed, fails to establish actionable negligence." *Patterson v. Swarr, May, Smith & Anderson*, 238 Neb. 911, 919, 473 N.W.2d 94, 100 (1991).

" 'There are three elements a plaintiff alleging attorney negligence must prove: (1) the attorney's employment, (2) the attorney's neglect of a reasonable duty, and (3) that such negligence resulted in and was the proximate cause of loss [damages] to the client. . . .' " *Id.*

Heavey's employment is undisputed. Regarding Heavey's alleged neglect of a reasonable duty, the appellants set forth two arguments. First, the appellants contend that McWhirt failed, as a matter of law, to present sufficient expert testimony regarding the standard of care and regarding the certainty of the expert's opinions as to Heavey's failure to meet that standard of care.

As mentioned previously, McWhirt's expert, Ortman, testified that in his opinion Heavey fell below the standard of care in several aspects when handling McWhirt's case. Ortman recited several of Heavey's actions which he did not believe met the standard of care, including failing to trace the inherited assets, giving improper advice regarding lifetime alimony testimony, negotiating the settlement in the manner that he did, and failing to advise McWhirt to refuse the settlement.

Heavey's counsel failed to object to Ortman's opinions. He did make three objections. Twice he objected to questions which were leading, and he also objected to Ortman's giving his opinion as to whether McWhirt suffered damage as a result of Heavey's deviation from the required standard of care.

An objection to an opinion of an expert based upon lack of certainty in the opinion is an objection based upon relevance. *Paulsen v. State*, 249 Neb. 112, 541 N.W.2d 636 (1996). If, when evidence is offered, the party against whom such evidence is offered fails to object or to insist upon a ruling on the objection to introduction of such evidence, and otherwise fails to raise the question as to its admissibility, that party is considered to have waived whatever objection he or she may have

had thereto, and the evidence is in the record for consideration the same as other evidence. *Id.*

The appellants, having failed to raise objections to Ortman's testimony, are now precluded from asserting that Ortman's opinion lacked certainty.

Triers of fact are not required to take opinions of experts as binding upon them. *Vredeveld v. Clark*, 244 Neb. 46, 504 N.W.2d 292 (1993). The determination of the weight that should be given expert testimony is uniquely within the province of the fact finder. *Id.* Ortman's testimony regarding whether Heavey deviated from the requisite standard of care was properly submitted to the jury for consideration.

The appellants also argue that the conduct of Heavey amounted only to mere errors of judgment and not professional negligence. We find, however, that when looking at all of the evidence submitted in a light most favorable to McWhirt, reasonable minds could differ as to whether Heavey's conduct amounted to professional negligence or only to mere errors of judgment.

In regard to proximate cause and damages, the appellants contend that McWhirt failed, as a matter of law, to provide sufficient evidence regarding the appellants' conduct being the proximate cause of any loss sustained by McWhirt. The proximate cause of an injury is that which, in a natural and continuous sequence, without any efficient intervening cause, produces the injury, and without which the injury would not have occurred. *Steuben v. City of Lincoln*, 249 Neb. 270, 543 N.W.2d 161 (1996).

"As an element of a negligence cause of action, a plaintiff must prove damages . . . with reasonable certainty." *Patterson v. Swarr, May, Smith & Anderson*, 238 Neb. 911, 919, 473 N.W.2d 94, 100 (1991). " 'In a negligence case . . . the proper measure of damages is that which will place the aggrieved party in the position in which he or she would have been had there been no negligence. . . .' " *Id.* at 920, 473 N.W.2d at 100.

The appellants argue that McWhirt's failure to provide expert testimony regarding the issue of proximate causation bars his claim as a matter of law. The appellants contend that

where the issue of causation is technical and not within the common knowledge of the jury, expert testimony is required to establish the same, citing the legal malpractice case *McVaney v. Baird, Holm, McEachen*, 237 Neb. 451, 466 N.W.2d 499 (1991). They contend the case at bar is such a case. However, the appellants' use of the proposition set forth in *McVaney* is misplaced.

*McVaney* involved an action by a plaintiff against the defendant law firm for its alleged failure to timely file a negligence action against the Metropolitan Utilities District for an explosion that destroyed the plaintiff's building. In *McVaney*, when this court was discussing the need for expert testimony as to proximate cause, we were discussing the burden on the plaintiff in proving the underlying negligence action, not the legal malpractice action. We stated that "the issue of causation of the explosion in McVaney's building was highly technical and not within the common knowledge and usual experience of a factfinding jury." *Id.* at 463, 466 N.W.2d at 508.

The underlying action in the instant case is divorce. Therefore, to survive a directed verdict, McWhirt was required to adduce evidence that Heavey's negligent actions caused McWhirt to accept the settlement proposal, and to adduce evidence showing damages with reasonable certainty resulting from the acceptance of the settlement and from forgoing trial by comparing his obligations under the settlement with those obligations he would have incurred if the case had gone to trial.

McWhirt testified that he believed all of his damages to be caused by the negligence of Heavey. Specifically, he stated that because of Heavey's negligence causing him to accept the settlement, he lost the inherited property, he incurred higher alimony and child support obligations, and he incurred attorney fees in attempting to have the decree set aside. McWhirt stated that he was pressured by Heavey into accepting the proposal.

Based on the evidence when viewed most favorably to McWhirt, reasonable minds could conclude that McWhirt would not have accepted the settlement proposal if it was not for Heavey's alleged acts of professional negligence. The par-

ties conceded that if the settlement had not been accepted, the case would have proceeded to trial.

McWhirt produced sufficient evidence to enable a jury to determine with reasonable certainty the damages proximately caused by the appellants. Ortman accurately testified that the general rule in this state is that alimony allowances requiring a husband to pay a fixed amount for an indefinite period of time are not favored. See *Cole v. Cole*, 208 Neb. 562, 304 N.W.2d 398 (1981). He also accurately testified that inherited property is considered nonmarital property. See *Reichert v. Reichert*, 246 Neb. 31, 516 N.W.2d 600 (1994). Although expert testimony regarding the status of the law is generally not admissible, see *Sports Courts of Omaha v. Brower*, 248 Neb. 272, 534 N.W.2d 317 (1995), Heavey did not object to the admissibility of Ortman's opinions concerning the law.

McWhirt also presented Ortman's opinion as to what would have been the reasonable and probable result of the property distribution if the case had gone to trial. Ortman stated that the inherited property would be separated from the marital property and would remain McWhirt's separate property. He stated that the marital property would be divided evenly. Lastly, Ortman stated that the alimony would be anywhere from $200 to $400, depending on the amount of years of payment the court imposed.

Several exhibits were admitted during McWhirt's testimony regarding marital property, nonmarital property, attorney fees incurred in attempting to set aside the decree, and differences in child custody obligations under the Nebraska Child Support Guidelines.

Finally, McWhirt introduced the expert opinion of Sullivan as to the present value of McWhirt's pensions and differences in alimony payments between McWhirt's current payments and Ortman's opinion as to what the court would have imposed after a trial.

For the reasons stated above, we find that when drawing all reasonable inferences in McWhirt's favor, the court correctly refused to find in favor of the appellants as a matter of law. We therefore affirm.

AFFIRMED.

CAPORALE, J., participating on briefs.