441 F.2d 741
 Carol BLACK, Paula Black and Mrs. Jo Swift, Plaintiffs-Appellees,
v.
UNITED STATES of America, Defendant, Third-Party
Plaintiff-Appellant, v. FIRSTNATIONAL BANK OF FORT
WORTH, TEXAS, Administrator of the
Estate of Allan T.Black,
Third-Party
Defendant-Appellee.
 No. 29629.
 United States Court of Appeals, Fifth Circuit.
 April 22, 1971.
 
 1
 Eldon B. Mahon, U.S. Atty., Fort Worth, Tex., Morton Hollander, Carl Eardley, Deputy Asst. Atty. Gen., Walter H. Fleischer, William D. Ruckelshaus, Asst. Atty Gen., Herbert L. Lyons, Atty., Dept. of Justice, Washington, D.C., for appellant.
 
 
 2
 John B. McClane, Fort Worth, Tex., for third-party defendant-appellee.
 
 
 3
 Jamail & Gano, Houston, Tex., for appellees Black and Swift, Joseph D. Jamail, John Gano, Houston, Tex., of counsel.
 
 
 4
 Before GOLDBERG and DYER, Circuit Judges, and GROOMS, District Judge.
 
 GROOMS, District Judge:
 
 5
 This is an appeal from a judgment, 303 F.Supp. 1249, in favor of appellees Carol Black and Paula Black in the amount of $100,000.00 each, and Mrs Jo Swift in the amount of $50,000.00, against the United States in an action under the Federal Tort Claims Act, 28 U.S.C.A. 1346(b), 2671-2680, for the wrongful death of Dr. Thomas Black and his wife, Jane Black. The Blacks were passengers in a Cessna 182 aircraft piloted by their son Allan when the plane crashed near Mabank, Texas, on May 9, 1965, at about 4:48 p.m. Carol and Paula Black are the daughters of Dr. and Mrs. Black, and Mrs. Swift is the mother of Mrs. Black.
 
 
 6
 The United States filed a third party complaint against the Estate of Allan Black and was awarded contribution from the Estate to the extent of one-half of the judgment against the United States.
 
 
 7
 The Cessna was en route from Baton Rouge, Louisiana, to Fort Worth, Texas, at the time of the crash. It left Baton Rogue at approximately 2 p.m. under Visual Flight Rules (VFR). Prior to leaving the pilot did not file a flight plan nor seek a weather briefing. At about 3 p.m., when the aircraft was in the vicinity of Alexandria, Louisiana, the pilot contacted the Flight Service Station at that place and requested the current altimeter setting and the winds at five thousand feet. He was given this information by the attendant on duty at the Station. The attendant made no inquiry of the pilot as to his course or destination. He did not advise the pilot of significant weather conditions within 150 miles of Alexandria. Sigmet Charlie 2 (significant meteorology)[1] had been issued by the Weather Bureau Forecast Center at Fort Worth at 1:10 p.m. The Alexandria and Baton Rouge Stations were in possession of this forecast. This information was available to the pilot on inquiry at Baton Rouge when he began his flight.[2] Sigmet Charlie 3[3] superseded Charlie 2 at 3:05 p.m. Charlie 2 was broadcast every fifteen minutes until automatically cancelled by Charlie 3, which in turn was broadcast at like intervals. The Cessna was radio equipped, but it is not known whether the pilot had his radio on. Only one communication was received from the pilot during his entire flight. The first information as to the plight of the plane and its occupants came when the plane was heard circling at a low altitude in the storm in the vicinity of the crash, some 225 miles from Alexandria.
 
 
 8
 Part 439 of the Federal Aviation Flight Assistance Service Handbook provides as follows:
 
 
 9
 '439.2 Whenever a SIGMET or Advisory to Light Aircraft exists which involves an area within 150 miles of the station, request the pilot's route and distination. Transmit the weather advisory if it is relevant.'
 
 
 10
 The court held that the failure of the station attendant at Alexandria to comply with this regulation and thereby to inquire of the pilot his route and destination and to advise him of the severe adverse weather which he would encounter on his course to Fort Worth was negligence. Appellant concedes that there was negligence on the part of the attendant in so failing in his duty.
 
 
 11
 Pilot Black held a commercial pilot's license with 600 hours flying time, but did not have an instrument rating. Federal Air Regulations 14 C.F.R. 61.83 provides that before a pilot can obtain his private pilot certificate he is required to pass a written test on '(c). recognizing dangerous weather conditions and evaluating weather reports * * *' Pilot Black had passed this test. The hazards of the weather were well known to him.
 
 
 12
 Visual Flight Rules, Sec. 91.107, prohibit a VFR pilot from flying with visibility of less than three miles and from flying within certain proscribed distances from cloud formations.
 
 
 13
 The court further found that the pilot was also guilty of negligence in that the weather conditions described in Sigmet Charlie 2 were clearly visible, that the pilot's VFR license did not authorize him to fly into clouds, Federal Air Regulations 14 C.F.R. 61.3, and that he was obligated to observe, recognize, and to avoid the weather conditions which confronted him.
 
 
 14
 The ultimare holding was that the concurring negligence of appellant and the pilot was the proximate cause of the crash and the death of the occupants of the plane.
 
 
 15
 Appellant contends that its negligence was superseded by that of the pilot, and that the pilot's negligence was the sole proximate cause.
 
 
 16
 At the outset appellant is met by the clearly erroneous rule applicable to the court's findings as to proximate cause. Findings of fact of the lower court are not to be set aside unless clearly erroneous. Rule 52(a), Fed.R.Civ.P. In Sanders v. Leech, 158 F.2d 486, in discussing Rule 52(c) we said:
 
 
 17
 'Under that rule, as it plainly reads and has been interpreted by the courts, it is not for the appellate court to substitute its judgment on disputed issues of fact for that of the trial court where there is substantial credible evidence to support the finding. It may reverse, though, under the rule (1) where the findings are without substantial evidence to support them; (2) where the court misapprehended the effect of the evidence; and (3) if, though there is evidence which if credible would be substantial, the force and effect of the testimony considered as a whole convinces that the finding is so against the great preponderance of the credible testimony that it does not reflect or represent the truth and right of the case.'
 
 
 18
 Appellant contends that substantial credible evidence does not support the finding.
 
 
 19
 The rules of law applicable generally to torts govern liability growing out of the operation of aircraft. King v. United States, 5 Cir., 178 F.2d 320; United States v. Schultetus, 5 Cir., 277 F.2d 322. The applicable law is that 'of the place where the act of omitsion occurred.' 28 U.S.C.A. 1346(b) and 2672. As to the appellant the omission constituting negligence occurred in Louisiana. It follows that the Louisiana proximate cause rule governs. The Louisiana rule in pertinent part is stated in Harvey v. Great American Indemnity Co. (La.App.), 110 So.2d 595, 600:
 
 
 20
 'The proximate cause of an injury is the primary or moving cause, or that which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury and without which the accident could not have happened, if the injury be one which might be reasonably anticipated or foreseen as a natural consequence of the wrongful act.
 
 
 21
 'When negligence is established, liability attaches for all injurious consequences that flow therefrom until diverted by intervention of some efficient cause that makes the injury its own, or until force set in motion by negligent act has so far spent itself as to be too small for law's notice.
 
 
 22
 '* * * The guiding principle is to determine whether a given act is a material element or a substantial factor in producing the particular result * * * 'The proximate cause of an injury is not necessarily that which is next or last in time or place, but that which is a procuring, efficient and predominant cause in sense of closeness in casual relation. 'Where a wrongful act puts other forces in operation which are natural and which the act would reasonably and probably put in action, the party who puts in force the first efficient cause will be responsible in damages for the injury proved, though immediately resulting from the other force so put in action.'
 
 
 23
 In Home Gas & Fuel Co. v. Mississippi Tank Co., 246 La. 625, 166 So.2d 252, 256, it was stated:
 
 
 24
 'When the negligence of the defendant greatly multiplies the chances of harm to plaintiff, and is of a character naturally leading to its occurrence, 'the mere possibility that it might have happened without the negligence is not sufficient to break the chain of cause and effect between the negligence and the injury.' Reynolds v. Texas & P. Py. co., 37 La.Ann. 694 (1885).'
 
 
 25
 Courts generally recognize the fact that no general rule can be formulated as to when a negligent act is the proximate cause of an injury. The answer depends upon the peculiar facts of each case.
 
 
 26
 It was the pilot's responsibility to obtain a weather briefing before leaving Baton Rouge under VFR conditions. If he had done so he would have discovered in advance that there were thunderstorms ahead of him. His failure in this respect was matched by his failure to make inquiry as to the weather as he proceeded along his course. Blind reliance on lack of information, assuming that he did so rely, could scarcely absolve him from the affirmative duty of seeking information that was readily available to him on inquiry or which he could have obtained merely by monitoring the stations along his route.
 
 
 27
 The storm was intense. It covered an extensive area. It was a wholly unsafe practice for a non-instrument rated pilot to approach and penetrate any cloud formation, least of all a storm of such severity. Such action was described as 'one of the most hazardous things' a pilot could do, since in so doing he could become completely disoriented and could lose all control of his aircraft. Good, even fundamental, flying practice dictated the avoidance of the storm front that of a certainty loomed ahead of the pilot. He should have altered or reversed his course, or better still have landed at the nearest suitable airport.
 
 
 28
 It is recognized that weather is a vital factor in cross-country flights. It is first of all up to the pilot to determine whether dangerous weather conditions prevail along his intended route. He must stay on the alert in the course of his flight. He must listen and give heed to the broadcasts of weather reports that could endanger him and his passengers. He had had extensive training in weather meteorology and his plane was equipped to receive weather reports.
 
 
 29
 If pilot Black received Sigmet Charlie 2, the failure of the station attendant at Alexandria to furnish him its contents when he contacted that station could not have misled him. Two hours and forty-eight minutes elapsed from the time of take-off to the time of the crash. almost two hours of this time followed the Alexandria contact. The plane covered approximately 320 miles from Baton Rouge and 225 miles from Alexandria. During the time the plane was in flight some twelve weather broadcasts were transmitted. These covered information as to the thunderstorms in the area toward which the pilot was heading.
 
 
 30
 The storm line was some 135 miles from Alexandria when the pilot was at that point. It was moving northeasterly at almost thirty miles per hour. The pilot was flying in a northwesterly direction. He had penetrated the storm area to a depth of 100 miles or more. This indicates that he was attempting to fly through the storm. As the court so aptly observed in Weissman v. Prashker, 405 Pa. 226, 175 A.2d 63, the pilot's 'penetration into the clouds, knowing that he could not navigate visually within them was as imprudent an act as diving into mid ocean not knowing how to swim.'
 
 
 31
 When the pilot came within sight of the storm front he most certainly received visual information which stood out in more vivid detail than any that he failed to receive from the operator at the time of the Alexandria contact. He was required to have flight visibility of at least three miles. To contend that he was suddenly engulfed in such a storm flies in the face of reality. His driving himself into a readily visible storm is inexplicable except for the fact that he intended to make the unlighted field at the point of his destination before dark in order to meet the next day's engagement regarding the purchase of a helicopter; and being so motivated decided to fly through the storm taking a chance on his knowledge of instrument flying to see him through.
 
 
 32
 When the pilot saw the storm he had to make a decision either to proceed, to alter or reverse his course, or to land. His decision was to proceed. From then on can it be said that the failure of the operator almost two hours earlier to warn him of Sigmet Charlie 2 proximately contributed to that decision? We think not.
 
 
 33
 The failure of the operator to warn the pilot of the presence of the storm in his path cannot be regarded as a continuing proximate cause after the pilot himself discovered its presence appreciated the danger, and decided to fly ahead into it. To rule out an appreciation of danger disregards the pilot's weather training and 600 hours of flying experience. Any contributing effect of the operator's negligent failure was replaced by the negligent action of the pilot when he saw but did not heed the warning of the actual presence of the storm itself.
 
 
 34
 In Neff v. United States, 136 U.S.App.D.C. 273, 420 F.2d 115, the court held that neither the airport control tower's silence regarding an approaching thunderstorm, nor its clearance of flights for take-off, including flight which crashed,
 
 
 35
 'could fairly be exalted into a governmental representation that would justify the pilots in claiming 'reliance' sufficient to warrant disregard of the apparent signs of danger.'
 
 
 36
 The following language in Rowe v. United States, D.C., 272 F.Supp. 462, 471, is apposite to the situation here presented:
 
 
 37
 'Superseding Cause. Even if it were found that any employee of the defendant was negligent, we think the patent recklessness of the non-instrument rated pilot superseded that negligence and would relieve the United States from liability for the deaths of Rowe and Smith. Restatement, Torts, 440, 447. The intervening act of the unqualified pilot in deliberately descending into a solid overcast was not only reckless conduct, but may be regarded as so highly extraordinary as to become a superseding cause of the deaths of his passengers, Rowe and Smith. We do not think that any employees of defendant could reasonably have foreseen such conduct on the part of the pilot. Id. 447, comment g; and see 500. Cf. Central Flying Service v. Crigger, 215 Ark. 400, 221 S.W.2d 45, 48.'
 
 
 38
 Appellant's negligence had 'so far spent itself as to be too small for (the) law's notice,' and was so completely superseded by that of the pilot that it was no longer a material element contributing to the tragic results that ensued. In our judgment the findings of the lower court on the issue of proximate cause are clearly erroneous. The case is reversed with direction to enter judgment for appellant-defendant below.
 
 
 
 [1]
 'Sigmet Charlie 2. In Oklahoma and North Texas at 1300 in the area from Tulsa to 20 miles southwest Hobart to 50 miles southeast Abilene to Longview, Texas, to Ardmore, Oklahoma, back to Tulsa, Oklahoma, numerous thunderstorms forming occasional lines. Some of thunderstorms severe and are moving northeastward about 25 knots and continuing beyond 1700.'
 
 
 [2]
 The attendant at Alexandria came on duty after Sigmet Charlie 2 was issued and testified that the Sigmet was not relayed to him
 
 
 [3]
 'Sigmet Charlie 3. Over Oklahoma and northeastern central and north Texas including Fort Worth area numerous thunderstorms occasionally forming lines. Extreme turbulence near most intense storms. Possibly large hail and a few tornadoes. Conditions continuing beyond 7 p.m.'