JACK J. WORTH, APPELLANT, V. TAMRA F. SCHILLEREFF, APPELLEE.
447 N.W.2d 480

Filed October 27, 1989.   No. 87-1151.

Robert P. Chaloupka, of Van Steenberg, Brower, Chaloupka, Mullin & Holyoke, for appellant.

Steven W. Olsen, of Simmons, Raymond, Olsen, Ediger, Selzer & Ballew, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

Claiming the district court for Scotts Bluff County erred in instructing the jury on intervening cause and standard of proof, Jack J. Worth appeals the trial court's denial of a new trial. We affirm.

"Intervening cause" is better understood when discussed in relation to proximate cause. Proximate cause of an injury is that cause which, in a natural and continuous sequence, unaccompanied by any efficient intervening cause, produces an injury, and without which the result would not have occurred. *Union Pacific RR. Co. v. Kaiser Ag. Chem. Co.*, 229 Neb. 160, 425 N.W.2d 872 (1988). "[A]n efficient intervening cause is a new and independent act, itself a proximate cause of an injury, which breaks the causal connection between the original wrong and injury." *Butorac v. Dixon County*, 232 Neb. 598, 600, 441 N.W.2d 620, 622 (1989) (citing *Looney v. Pickering*, 232 Neb. 32, 439 N.W.2d 467 (1989)).

A motion for a new trial is addressed to the discretion of the trial court, and absent an abuse of discretion, the trial court's ruling will be upheld on appeal. *Lemke v. Northwestern Public Serv. Co., ante* p. 223, 444 N.W.2d 326 (1989).

On November 6, 1985, appellant was stopped at an intersection in Gering, Nebraska, when his truck was struck from behind by an automobile driven by appellee, Tamra F. Schillereff. Approximately 5 days after the accident, appellant saw Dr. Daryl D. Wills, a chiropractor. Worth complained of acute back pain, overall aching, and some catching in his upper back, as well as an upset stomach. Worth was a patient of Dr. Wills' until April 14, 1986, when appellant changed chiropractors and became the patient of Dr. Thomas K. Tomoi. On September 12, 1986, Dr. Tomoi referred appellant to Dr. Ernest W. Beehler, a neurosurgeon. On September 29, 1986, Dr. Beehler performed a laminectomy at the L4-5 level of Worth's spine.

On April 23, 1987, appellant brought suit against Schillereff to recover damages for the personal injuries he sustained as a result of the accident. In his first cause of action, Worth sought $31,531.65 in special damages, in addition to general damages. In his second cause of action, which was assigned to him by his

wife, Worth sued for the loss to his wife of his services and his consortium. On June 25, 1987, the trial court granted Worth's motion for summary judgment and found Schillereff liable for the accident. The case was ultimately submitted to a jury only upon the issue of damages proximately caused by appellee's negligence.

At the conclusion of the evidence, the trial court instructed the jury on proximate cause, intervening cause, and damages. The trial court instructed that future damages must be "reasonably certain." The jury returned a verdict for Worth in the amount of $7,443.

In his assignments of error, Worth claims the trial court erred (1) in giving that portion of an instruction dealing with efficient intervening cause; and (2) in instructing that Worth must "prove the various elements of damage by the standard, 'reasonably certain', when the standard which has been recognized in this state since 1981 is 'reasonably probable'."

In arguing that it was error to give an instruction on intervening cause, Worth notes that Schillereff did not plead intervening cause as a defense in her answer.

In *Greening v. School Dist. of Millard*, 223 Neb. 729, 735, 393 N.W.2d 51, 56 (1986), we stated that intervening cause was an element of proximate cause.

> "There are three basic requirements in establishing proximate cause. The first requirement is that the negligence be such that 'without which the injury would not have occurred,' commonly known as the 'but for' rule. . . .
>
> The second requirement is that the injury be the natural and probable result of the negligence. . . .
>
> . . . .
>
> The third requirement is that there be no efficient intervening cause."

See, also, *Daniels v. Andersen*, 195 Neb. 95, 237 N.W.2d 397 (1975).

Whether requested to do so or not, the trial court has the duty of instructing the jury on issues presented by the pleadings and the evidence. *Anderson v. Union Pacific RR. Co.*, 229 Neb. 321, 426 N.W.2d 518 (1988); *Juniata Feedyards v. Nuss*,

216 Neb. 29, 342 N.W.2d 1 (1983). The remaining question, therefore, is whether the evidence supported an instruction on intervening cause.

During the trial, Dr. Wills testified that tests performed after the accident on Worth's cervical thoracic spine led him to conclude that Worth "sustained an acute traumatic cervical thoracic strain, sprain syndrome and an internal derangement of the right shoulder." Dr. Wills further testified that from tests performed on the lumbosacral spine, he felt appellant "had suffered an acute traumatic lumbar lumbosacral strain, sprain syndrome with severe myalgia and lumbalgia."

On cross-examination, Dr. Wills testified that Worth "did not have the classic symptoms of an acute disk herniation but he did have indication of nerve root irritation which could have been discogenic in origin." Dr. Wills attributed the leg pain to a nerve irritation in the lumbar spine, possibly related to sleeping posture. He stated that if the leg pain had been symptomatic of a disk herniation, the pain would be acute and unrelenting. "Usually a disk lesion is exemplified by extreme back and leg pain, more so in the leg. It comes on very acutely from a specific instance, it's not relenting, it does not give up." Dr. Wills also testified that Worth had a preexisting degenerated L5-S1 disk of the lumbar spine that "definitely would predispose him to nerve root irritation if in fact a nerve were impinged or pressed upon."

Other evidence at trial revealed that Worth had suffered an electrical shock on September 3, 1986. As Worth was working in a tree, he touched a branch that was in contact with a 220-volt powerline. Dr. Tomoi's history taken from Worth indicated that the resulting electrical shock caused appellant to jerk backward. Dr. Tomoi was the only person treating Worth immediately before and immediately after the shock incident. Before the electrical shock, Dr. Tomoi diagnosed appellant as having a "hyperextension whiplash region to the lower cervical, upper thoracic spine" and "a mild sprain, strain of the lumbosacral spine." Dr. Tomoi testified that before the shock, appellant did not persistently complain of low back pain. He termed Worth's low back pain a "mild low back irritation." Dr. Tomoi testified that there was no relationship between the severity of the car accident and the severity of Worth's

whiplash. Dr. Tomoi said that the day after the shock, Worth began complaining of sciatic pain. Dr. Tomoi said that sciatic pain was consistent with nerve root irritation at the L4-5 level. Tests performed on Worth by Dr. Tomoi revealed that appellant had suffered a disk protrusion. Appellant was referred to Dr. Beehler.

Worth testified that on September 19, 1986, before seeing Dr. Beehler, a sneeze caused him to experience severe pain in his lower back. On September 21, 1986, appellant was admitted to the hospital for back surgery. Dr. Beehler testified that a sneeze could cause the rupture of a disk which had started to rupture earlier.

Worth relies upon the opinion of Dr. Beehler, who testified that "the car wreck, the accident, was a major factor in probably starting this thing rolling." However, on cross-examination, Dr. Beehler acknowledged that the electrical shock was a factor in the production of the ruptured disk. He declared that if the electrical shock was of a severe magnitude, "it could have produced a total rupture right then and there."

Evidence at trial also showed that Worth had a history of chiropractic treatments, including 28 treatments in 1967, 52 treatments in 1983 after falling from a truck, and 10 treatments in 1984 for low back pain. Dr. Tomoi testified that all these factors were important in evaluating appellant's condition. Worth never told Dr. Beehler of the electrical shock or, apparently, the sneeze. Dr. Beehler did not know of the electrical shock until Worth's attorney informed him of it prior to trial. Evidence also revealed that on December 20, 1985, Worth fell on some ice onto his back. Dr. Tomoi testified that appellant stated that the fall had aggravated his condition.

The testimony of the treating chiropractors, Dr. Wills and Dr. Tomoi, as well as the testimony of the neurosurgeon, Dr. Beehler, provides sufficient evidence to support an instruction on intervening cause. The evidence presented a question of fact for resolution by the jury, and the jury resolved it. "It is for the jury, as trier of the facts, to resolve conflicts in the evidence and to determine the weight and credibility to be given to the testimony of the witnesses." *Joyner v. Steenson*, 227 Neb. 766,

769, 420 N.W.2d 278, 280 (1988).

Worth's second assignment of error claims that since "the standard which has been recognized [for proof of future damages] in this state since 1981 is 'reasonably probable,' " the trial court erred in refusing to include, as Worth requested, the words "reasonably probable" rather than "reasonably certain" in its damages instruction to the jury. The trial court instructed the jury that if proven by a preponderance of the evidence, damages were to be awarded in an amount of money that would fairly and reasonably compensate Worth for disability and mental or physical pain and suffering "[r]easonably certain" to be experienced in the future. The trial court also instructed the jury that damages proven by a preponderance of the evidence were to be awarded for the value of the society, companionship, conjugal relationship, and services of which Worth's spouse is "reasonably certain" to be deprived in the future.

The Supreme Court examines an instruction to determine whether it is a correct statement of law. *Cassio v. Creighton University, ante* p. 160, 446 N.W.2d 704 (1989). This court has said that "reasonable certainty" and "reasonable probability" are one and the same thing. *Lane v. State Farm Mut. Automobile Ins. Co.*, 209 Neb. 396, 308 N.W.2d 503 (1981). The instruction given was a correct statement of law.

> In order to establish as error the trial court's refusal to give a tendered instruction, an appellant is under a threefold burden to show that he or she was prejudiced by the court's refusal, that the tendered instruction is a correct statement of the law, and that the instruction is applicable to the evidence in the case.

(Emphasis omitted.) *Cassio v. Creighton University, supra* at 177, 446 N.W.2d at 715. Appellant has failed to show that he was prejudiced by the court's refusal to tender the requested instruction.

We conclude that the evidence supported an instruction on intervening cause. The trial court did not err in refusing appellant's request that the instruction on future damages include the words "reasonably probable" rather than "reasonably certain."

The trial court did not abuse its discretion in refusing to grant

appellant's motion for a new trial.

AFFIRMED.