15 F.3d 1444
 Joan BUDDEN, Personal Representative of the Estate of Craig
Budden, deceased; Wilma Lewis, Personal Representative of
the Estate of Craig Budden, deceased; Ronald Rodgers, doing
business as Rodgers Helicopter Service; Associated Aviation
Underwriters; Appellants,
Aetna Life & Casualty Co.
v.
UNITED STATES of America, Appellee.
 No. 93-1149.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 13, 1993.
Decided Feb. 8, 1994.
 
 C.L. Robinson, Omaha, NE, argued, for appellant.
 Thomas K. Pfister, Washington, DC, argued, for appellee.
 Before HANSEN, Circuit Judge, LAY and BRIGHT, Senior Circuit Judges.
 
 
 1
 ORDER AMENDING OPINION AND DENYING PETITION FOR REHEARING
 
 
 2
 The majority opinion in this case, filed November 3, 1993, 8 F.3d 1278, is amended in these respects:
 
 
 3
 (1) The first sentence of the first complete paragraph on page 1283 of the opinion is modified to read:
 
 
 4
 The district court found that Budden also breached his duty by failing to exercise reasonable care under the circumstances. (Additional Findings on Remand, December 8, 1992.)
 
 
 5
 (2) The last full paragraph on page 1283 is modified to omit the period after the word "crash" and add the phrase "and operated as the sole proximate cause of the accident."
 
 
 6
 (3) Footnote 10, at page 1285, is added to the opinion. The footnote reads:
 
 
 7
 The changes are incorporated into a revised opinion which, together with the dissent of Judge Lay, is attached for filing.
 
 
 8
 The court has carefully considered the appellant's strong petition for rehearing. With the foregoing changes, the majority denies the petition for rehearing.
 
 
 9
 LAY, Senior Circuit Judge, dissenting.
 
 
 10
 I dissent from the denial of the petition for rehearing. As the petition for rehearing points out, the majority's analysis regarding intervening cause is a complete aberration under Nebraska law and any other existing law.
 
 
 11
 As the Supreme Court of Nebraska recently observed:
 
 
 12
 "[T]he doer of an original wrongful act that should reasonably cause one to anticipate an injury therefrom is not relieved from liability for an injury immediately brought about by an intervening cause, wrongful or otherwise, that is set into operation by such original wrongful act, and that alone would not have caused the injury, but which with the aid of the original wrong does cause such injury."
 
 
 13
 Stodola v. Grunwald Mechanical Contractors, Inc., 228 Neb. 301, 422 N.W.2d 341, 344 (1988) (quoting Johnson v. Metropolitan Utilities Dist., 176 Neb. 276, 125 N.W.2d 708, 711 (1964)). The Stodola court continued:
 
 
 14
 "Generally, the effect of an intervening negligent act is tested by determining whether it was such as might reasonably have been foreseen as a consequence of the claimed negligence of the original actor.... The law does not require precision in foreseeing the exact hazard or consequence which happens. It is sufficient if what occurs is one of the kind of consequences which might reasonably be foreseen."
 
 
 15
 Id. (quoting Brown v. Nebraska P.P. Dist., 209 Neb. 61, 306 N.W.2d 167, 171 (1981) (emphasis added).
 
 
 16
 Additionally, the Restatement (Second) of Torts, Sec. 442B, comment b, (1965), reads:
 
 
 17
 If the actor's conduct has created or increased the risk that a particular harm to the plaintiff will occur, and has been a substantial factor in causing that harm, it is immaterial to the actor's liability that the harm is brought about in a manner which no one in his position could possibly have been expected to foresee or anticipate.
 
 
 18
 Id.
 
 
 19
 Before HANSEN, Circuit Judge, LAY and BRIGHT, Senior Circuit Judges.
 
 
 20
 BRIGHT, Senior Circuit Judge.
 
 
 21
 This case arises out of the December 20, 1985 crash of a helicopter ambulance in the Nebraska countryside. The estate of deceased pilot Craig Budden, along with aircraft owner Ronald Rodgers and Associated Aviation Underwriters, sued the FAA under the Federal Tort Claims Act (FTCA), 28 U.S.C. Sec. 1346(b) (1982), alleging that flight service specialist Robert Geranis failed to fully notify Budden of forecast adverse weather conditions during a pre-flight briefing.
 
 
 22
 The district court found in favor of the Government. Budden v. United States, 748 F.Supp. 1374 (D.Neb.1990), vacated, 963 F.2d 188 (8th Cir.1992). On initial appeal, we determined that Geranis negligently omitted important information about cloud ceilings of less than 1,000 feet. Budden v. United States, 963 F.2d 188 (8th Cir.1992) [Budden I ].[1] We vacated the district court's judgment and remanded for findings on proximate cause and intervening cause. The district court found on remand that Budden's in-flight negligence was the sole proximate cause of the crash. On appeal, appellants contend that the trial court erred in finding Craig Budden negligent and his negligence the sole cause of the crash.[2] We now affirm.
 
 I. BACKGROUND
 
 23
 On the afternoon of December 20, 1985, Craig Budden, a pilot employed by Rodgers Helicopter Service (RHS), received a routine phone call from Good Samaritan Hospital requesting that he fly from Kearney to Ainsworth, Nebraska to pick up a critically ill patient. The hospital had contracted with RHS for use of its Air Care helicopter; under the contract, either Budden or Ronald Rodgers would fly the mission depending on which pilot was on call that day. Budden agreed to make the flight to Ainsworth.
 
 
 24
 At 5:45 p.m., Budden called the FAA's Omaha flight service station for a weather briefing. Flight Specialist Geranis had three forecasts available to him at that time--terminal forecasts, the applicable Chicago area forecast, and transcribed weather broadcasts (TWEBs). Terminal forecasts provide weather information for specified cities. Area forecasts cover a large region and apply to areas between terminal destinations. TWEBs forecast weather within specified fifty-mile-wide flight corridors. Geranis provided Budden with terminal forecasts for Ainsworth and Broken Bow, which called for no worse than 1,200-foot ceilings and three miles visibility. Geranis, however, did not consult the Chicago area forecast which called for possible rime icing[3] and cloud ceilings below 1,000 feet. Geranis also did not consult the TWEBs, which included reports of freezing drizzle in Budden's probable flight path.[4]
 
 
 25
 FAA regulations prohibit helicopter flights at night with ceilings at or below 1,200 feet, unless visibility is at least one mile. 14 C.F.R. Sec. 135.205(b)(2) (1989). RHS' more stringent flight regulations, which prohibited flying with less than 1,000-foot cloud ceilings and/or three miles visibility, were incorporated into FAA regulations.[5] (United States' Appendix at 357-58.) FAA rules also proscribe helicopter flight at night under Visual Flight Rules unless the pilot has visual surface light reference sufficient to safely control the aircraft. 14 C.F.R. Sec. 135.207 (1989).
 
 
 26
 Based on Geranis' briefing, Budden took off for Ainsworth at 6:01 p.m. with two nurses from Good Samaritan Hospital on board. The flight took place under Visual Flight Rules.
 
 
 27
 The helicopter crashed twenty miles short of its destination just before 7:00 p.m., killing Budden and the two nurses. Although no one actually witnessed the crash, several ranchers along Budden's route observed the helicopter during its last few minutes of flight. Eight miles southeast of the crash site, Budden flew over the Hutchinson ranch. Mr. Hutchinson heard the helicopter flying north; he estimated that the aircraft flew at 80-120 m.p.h. in cloud ceilings of between 500-1000 feet. Mr. Kuchera, whose ranch is six miles southeast of the crash site, testified that the helicopter flew over heading northwest at about 120 m.p.h. and an altitude of 300 feet; Kuchera stated that skies at 6:30 p.m. were cloudy, and a freezing drizzle or mist created a one-quarter inch of ice on his car windshield. Budden next flew over the Hollenbeck ranches, which are about four miles from the accident site. Both Terry and Deb Hollenbeck testified that the helicopter flew over their ranches at approximately 200 feet. After they turned off their yard light to get a better view, they observed the aircraft continue its flight to the northwest. Terry Hollenbeck stated that the helicopter had its landing light on while near the ranch. Deb Hollenbeck described the weather as a light drizzle. Budden crashed into a sandhill approximately four miles northwest of the Hollenbeck ranches.
 
 
 28
 Budden's Estate sued the United States for wrongful death; Rodgers Helicopter Service sued for damages, and Associated Aviation Underwriters, insurers of both Budden and the helicopter, sued for contribution. The parties elicited expert testimony from aviation and meteorological consultants on the issue of causation. Michael Carnevale, the Government's expert, theorized that while flying at dangerously high speed and low altitude, Budden flew into a scud cloud[6], got disoriented, and crashed while trying to move below the cloud. The appellants' experts opined that a combination of icing and low visibility forced Budden to attempt an emergency landing at the Hollenbeck ranch; after the attempt was thwarted when the Hollenbecks turned out their yard light, Budden flew on hoping to find another light, experienced spacial disorientation[7] due to icing, then crashed.
 
 
 29
 Prior to remand, the district court held in favor of the United States. Budden v. United States, 748 F.Supp. 1374 (D.Neb.1990), vacated, 963 F.2d 188 (8th Cir.1992). It found that Geranis' failure to brief Budden on the forecast icing conditions constituted negligence. The district court further found that rime icing presented the kind of weather condition that, if known, would likely influence a pilot's decision as to whether to fly. Nevertheless, the district court concluded that icing did not cause the crash, and therefore Geranis' omission of the icing forecast did not proximately cause the accident. According to the district court, "it was the pilot's continued flight into deteriorating weather conditions consisting of decreasing cloud ceilings and visibility, not icing, that caused this accident." Id. at 1389.
 
 
 30
 In Budden I, we determined that the trial court erred in failing to find that Geranis also breached his duty of care by omitting information about occasional cloud ceilings below 1,000 feet and possible visibility of less than three miles. We vacated the district court's decision and remanded for findings under Nebraska law on the issues of proximate cause, intervening cause, and Budden's negligence, if any. Budden I, 963 F.2d at 194.
 
 
 31
 On remand, the district court found insufficient evidence upon which to base a conclusion about whether a complete and accurate weather briefing would have deterred the flight. The trial court did find, however, that Budden violated FAA rules and RHS' policies by flying with less than 1,000-foot ceilings and three miles visibility during the last eight miles of flight. The district court concluded that Budden's negligence in knowingly flying into worsening conditions constituted the sole proximate cause of the accident. Budden v. United States, 808 F.Supp. 1444 (D.Neb.1992).
 
 
 32
 Appellants timely appealed. We must determine whether the district court erred in finding that the pilot's negligence was the sole proximate cause of the crash, or to look at the flip side of the appellants' contention, that the trial court erred in finding that Geranis' negligence was not a proximate cause of the accident.
 
 II. DISCUSSION
 A. Standard of Review
 
 33
 Proximate cause constitutes a finding of fact under Nebraska law. Kumar v. Douglas County, 234 Neb. 511, 452 N.W.2d 21, 25 (1990). This court reviews findings of fact under the clearly erroneous standard. Fed.R.Civ.P. 52(a); Norwest Capital Management & Trust Co. v. United States, 828 F.2d 1330, 1336-37 (8th Cir.1987). A factual finding is clearly erroneous when, although there is evidence to support it, the reviewing court is "left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).
 
 B. Applicable Law
 
 34
 Courts decide FTCA claims under the law of the state where the tort occurred. 28 U.S.C. Sec. 1346(b) (1982); Goodman v. United States, 2 F.3d 291 (8th Cir.1993). Because the weather briefing and Budden's entire flight occurred in Nebraska, we turn to Nebraska's law of proximate cause and intervening cause.
 
 
 35
 Nebraska law requires a plaintiff alleging negligence to prove by a preponderance of the evidence the four familiar common law elements--a duty owed to the plaintiff, breach of that duty, proximate causation, and damages. Zeller v. Howard County, 227 Neb. 667, 419 N.W.2d 654, 657 (1988). Liability for negligence arises only when the negligent act proximately causes the injury. Jarosh v. Van Meter, 171 Neb. 61, 105 N.W.2d 531, 536 (1960). An accident can have more than one proximate cause. London v. Stewart, 221 Neb. 265, 376 N.W.2d 553, 556 (1985).
 
 
 36
 In order to establish proximate cause a plaintiff must show that: (1) the negligence is such that the injury would not have occurred without it (but-for causation or cause-in-fact); (2) the injury was a natural and probable result of the negligence (foreseeability); and (3) there was no efficient intervening cause. Worth v. Schillereff, 233 Neb. 628, 447 N.W.2d 480, 483 (1989). The Supreme Court of Nebraska defines an efficient intervening cause as a " 'new and independent act, itself a proximate cause of an injury, which breaks the causal connection between the original wrong and injury.' " Id., 447 N.W.2d at 482 (quoting Butorac v. Dixon County, 232 Neb. 598, 441 N.W.2d 620, 622 (1989)).
 
 C. Breach of Duty by Both Actors
 
 37
 Both Robert Geranis and Craig Budden breached their respective duties of care regarding the fatal helicopter accident. In Budden I we determined that Geranis breached his duty of care by failing to provide Budden with the Chicago area forecast, which called for occasional cloud ceilings below 1,000 feet. Budden I at 194.[8] The determination that Geranis breached his duty to Budden establishes the law of the case which we apply on this appeal.
 
 
 38
 The district court found that Budden also breached his duty by failing to exercise reasonable care under the circumstances. (Additional Findings on Remand, December 8, 1992.) Testimony from Hutchinson, Kuchera, and the Hollenbecks, supports the district court's finding that Craig Budden breached his duty of care by failing to act reasonably when he encountered cloud ceilings below 1,000 feet and visibility of less than three miles. Budden knew or should have known that his only reasonable course of action was to abort the mission, either by turning the aircraft around or landing immediately. We determine that substantial evidence supports the finding by the trial judge that Budden's action in flying further into the bad weather at low altitude constituted a breach of duty.
 
 D. Determination of Proximate Cause
 
 39
 The district court found that Budden's conduct constituted the sole proximate cause of the crash. Although the unique facts of this case make for a close call on proximate cause, the district court did not clearly err.
 
 
 40
 Budden's conduct meets all three prongs of the Nebraska proximate cause test: the accident would not have occurred but for his negligence; a disastrous accident could or should have been foreseen as a natural and probable result of failing to act immediately to get out of the bad weather; and no cause intervened between Budden's negligence and the accident.
 
 
 41
 Geranis' breach of duty meets the first two prongs of the proximate cause test, but not necessarily the third. First, we should assume that if Budden had received a complete weather briefing, he would not have attempted the flight. This result derives from the presumption that the negligence of a deceased person must be proved, and absent such proof, the deceased is assumed to have exercised due care. Neff v. United States, 420 F.2d 115, 117 n. 3 (D.C.Cir.1969); Stauffer v. School Dist. of Tecumseh, 238 Neb. 594, 473 N.W.2d 392, 395 (1991). Second, although not probable in a statistical sense, a deadly crash is a foreseeable result of providing an inaccurate weather forecast.
 
 
 42
 The district court could find on this record, however, that Budden's subsequent negligent conduct constituted an intervening cause which rendered the negligent briefing a remote rather than proximate cause of the accident. While Geranis knew or should have known that the pilot would rely on the weather information in taking off on the flight, the briefer was not duty bound to anticipate that Budden would continue the mission despite weather conditions which mandated aborting the flight. Thus, the district court's proximate cause determination rests on the proposition that Budden's conduct broke the causal connection between Geranis' breach of duty and the crash and operated as the sole proximate cause of the accident.
 
 
 43
 Although the district court made no factual finding that the pilot would have initiated the flight or would not have done so with a full weather briefing, that observation does not amount to a crucial determination in the case.[9] The trial court's findings that the pilot's negligence constituted the accident's sole proximate cause stand independent of its comment relating to the pilot's decision as to whether or not to take off.
 
 
 44
 These are the crucial findings of the trial court:
 
 
 45
 I conclude that the negligence of Robert Geranis in failing to advise Budden of the area forecast of below-1,000-foot ceilings was not a proximate cause of the accident, that the sole proximate cause of the accident was the negligence of Budden in continuing to fly into deteriorating weather conditions consisting of decreasing cloud ceilings and visibility for a substantial period of time after he was aware through personal observation of those weather conditions and failing to take reasonable preventive measures.
 
 
 46
 ....
 
 
 47
 The greater weight of the persuasive evidence is that visibility gradually decreased as the aircraft proceeded to the northwest. Scud clouds became more prevalent as the pilot proceeded along the traveled route during the last several miles. Precipitation was first encountered at about the Hutchinson ranch, approximately eight miles from the accident scene. The precipitation increased for the next several miles from a mist to a light drizzle. Cloud ceilings below 1,000 feet were also first encountered at about the Hutchinson ranch. Ceilings decreased to perhaps 300 or 400 feet by the time of the arrival at the accident site. Scud clouds, partially in the form of fog, were below the cloud ceiling. Rodgers' Helicopter Service operating procedures, which became part of the rules and regulations of the F.A.A., required that Budden have at least a 1,000-foot ceiling and visibility of three miles at night. Budden was in violation thereof for approximately the last eight miles of the flight.
 
 
 48
 Budden could have--and a reasonable person in the same circumstances would have--made a 180-degree turn to fly back toward the area from which he come [sic] or could have landed. Budden did neither. He, rather, continued to fly into worsening conditions at cruising speed.
 
 
 49
 That was negligence which constituted the sole proximate cause of [the] accident.
 
 
 50
 Additional Findings on Remand dated December 8, 1992.
 
 
 51
 In somewhat similar cases, courts have emphasized the pilot's duty to avoid weather hazards, and have held the failure to do so to be the sole proximate cause of the ensuing accident, notwithstanding the Government briefer's failure to provide full adverse weather information to the pilot. See, e.g., In re Air Crash at Dallas/Fort Worth Airport, 919 F.2d 1079, 1088 (5th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 276, 116 L.Ed.2d 228 (1991) ("The court's finding that the crew's deliberate decision to land through a known thunderstorm located at the end of the runway, when they could easily have gone around, was the sole proximate cause of this disaster is not clearly erroneous[.]"); Black v. United States, 441 F.2d 741 (5th Cir.), cert. denied, 404 U.S. 913, 92 S.Ct. 233, 30 L.Ed.2d 186 (1971) (pilot error, not failure of attendant at flight service station to inquire of route and destination and furnish adverse weather warnings under government regulations, constituted sole proximate cause of aircraft crash). In Black, the court observed that:
 
 
 52
 Good, even fundamental, flying practice dictated the avoidance of the storm front that of a certainty loomed ahead of the pilot. He should have altered or reversed his course, or better still have landed at the nearest suitable airport.
 
 
 53
 Id. at 744.
 
 
 54
 Budden's actions are distinguishable from those of the pilot in Norwest Capital Management & Trust Co. v. United States, 828 F.2d 1330 (8th Cir.1987). There we set aside a trial court's determination of pilot error as sole proximate cause where the government's flight service specialists failed to warn the pilot of icing and other dangerous weather. In Norwest, the air crash occurred shortly after takeoff, only three miles from the airport, with the aircraft facing in the direction of the airport. The weight of the evidence suggested that the pilot sought to return to his base. The court commented:
 
 
 55
 [The pilot's] only prudent alternative upon encountering the icing would be to try to drop down under the clouds and turn around and head back to the Hot Springs airport. This is exactly what the evidence shows he attempted to do.
 
 
 56
 Id. at 1341. Here, the district court found that Budden, unlike the pilot in Norwest, failed to avail himself of prudent alternatives.
 
 
 57
 On this record, the district court made a close call on circumstantial evidence about the pilot's conduct in relation to the adverse weather which he confronted. The evidence presented by its very nature gives rise to varying conclusions. While another fact finder might have reached a different conclusion on proximate cause and on the pilot's negligence, we cannot say that the district court's ultimate finding that the pilot's negligence solely caused the tragic air crash is clearly erroneous.
 
 Accordingly, we affirm.[10]
 
 58
 LAY, Senior Circuit Judge, dissenting.
 
 
 59
 I respectfully dissent.
 
 
 60
 I would reverse and remand for further proceedings before the district court. I am well aware litigation should be brought to an end and we should be reluctant to remand the same case a second time.[1] Nonetheless, if the parties are to receive a fair trial and if Nebraska law is to be correctly applied, further remand is necessary.
 
 
 61
 The majority opinion not only misapplies settled principles of Nebraska law, it also fails to analyze why the district court found the government's negligence was not a proximate cause of the helicopter crash.
 
 
 62
 The majority initially fails to discuss the reasoning of the district court in finding that the government's negligence could not be a proximate cause of the crash. The district court held that the government's negligence in failing to warn the pilot of the low ceiling was not a proximate cause because there was no evidence that the pilot would have heeded the warning had the government provided one. The majority points out the error of this reasoning but then by misapplying Nebraska law finds the district court's mistake not to be a crucial determination.
 
 
 63
 Proximate cause is defined under Nebraska law as "that cause which, in a natural and continuous sequence, unaccompanied by any efficient intervening cause, produces the injury, and without which the result would not have occurred." Belgum v. Mitsuo Kawamoto & Assoc., Inc., 236 Neb. 127, 459 N.W.2d 226, 229 (1990). The majority correctly observes that in order to establish proximate cause under Nebraska law, a plaintiff must show three elements: (1) the negligence is such that the injury would not have occurred without it (but-for causation or cause-in-fact); (2) the injury was a natural and probable result of the negligence (foreseeability); and (3) there was no efficient intervening cause. Worth v. Schillereff, 233 Neb. 628, 447 N.W.2d 480, 483 (1989). In determining that the government's inadequate weather forecast was not a proximate cause of the crash, the district court stated that there was insufficient evidence to prove whether or not the pilot would have taken off even if the warning had been given.[2] From this lack of evidence, the district court concluded that it "[did] not find that Budden would not have taken off," and, therefore, that the government's negligence was not proven to be a proximate cause of the crash. The district court then concluded that Budden's negligence was the sole proximate cause of the accident. The majority explicitly holds that, absent contrary evidence, the failure to presume that the pilot would not have taken off given an accurate report was erroneous. The majority's opinion states:
 
 
 64
 Geranis' breach of duty meets the first two prongs of the proximate cause test.... First, we should assume that if Budden had received a complete weather briefing, he would not have attempted the flight. This result derives from the presumption that the negligence of a deceased person must be proved, and absent such proof, the deceased is assumed to have exercised due care. Neff v. United States, 420 F.2d 115, 117 n. 3 (D.C.Cir.1969); Stauffer v. School Dist. of Tecumseh, [238 Neb. 594] 473 N.W.2d 392, 395 (1991). Second, although not probable in a statistical sense, a deadly crash is a foreseeable result of providing an inaccurate weather forecast.[3]
 
 
 65
 Ante at 1449-50 (emphasis added).
 
 
 66
 The majority further states: "As noted above, the pilot should be presumed to have exercised due care in making his initial decision to fly, and thus we must assume that with full advice of weather information a flight cancellation would have followed. See Norwest, 828 F.2d at 1333." Ante at 1450 n. 9 (emphasis added).
 
 
 67
 Further, it is worth noting that had the government properly warned Budden that the ceiling was less than 1,000 feet, Budden would have violated FAA regulations by taking off. At common law there is a continuing presumption that a party will be presumed to obey the law. See 29 Am.Jur.2d Evidence Sec. 168 (1967 & Supp.1993). The result of this is that, under the majority's opinion, the government's negligence is presumed to be a cause in fact of the pilot's decision to fly, and an accident resulting from the government's inadequate weather forecast was foreseeable. Thus, I respectfully submit that by the majority's own analysis, absent a finding of intervening cause, the district court's finding that the government's negligence could not be a proximate cause of the accident was clearly erroneous.
 
 
 68
 In addressing the third prong of the proximate cause test, the majority holds that:
 
 
 69
 The district court could find on this record, however, that Budden's subsequent negligent conduct constituted an intervening cause which rendered the negligent briefing a remote rather than proximate cause of the accident. While Geranis knew or should have known that the pilot would rely on the weather information in taking off on the flight, the briefer was not duty bound to anticipate that Budden would continue the mission despite weather conditions which mandated aborting the flight. Thus, the district court's proximate cause determination rests on the proposition that Budden's conduct broke the causal connection between Geranis' breach of duty and the crash.
 
 
 70
 Ante at 1450.
 
 
 71
 In finding that Budden's negligence was an intervening cause of the accident that broke the causal connection between the government's breach of duty and the crash, the district court clearly misapplies Nebraska law.
 
 
 72
 An efficient intervening cause under Nebraska law is " 'a new and independent act, itself a proximate cause of an injury, which breaks the causal connection between the original wrong and injury.' " Worth, 447 N.W.2d at 482 (citations omitted) (emphasis added). The very fact that the crash was the foreseeable result of the inadequate weather forecast, as the majority finds, and that the inadequate weather forecast induced the pilot to take off and encounter the bad weather, precludes a finding that the pilot's negligence was "new and independent." It is the very possibility that a pilot will respond inadequately, or even negligently, that makes a crash the foreseeable result of an inadequate weather forecast. As the Nebraska Supreme Court has stated:
 
 
 73
 If the likelihood of the intervening act was one of the hazards that made defendant's conduct negligent--that is, if it was sufficiently foreseeable to have this effect--then defendant will generally be liable for the consequences; otherwise he will generally not be, provided, of course, that the intervening force is a cause of the injury.
 
 
 74
 Union Pac. R.R. v. Kaiser Agricultural Chem. Co., 229 Neb. 160, 425 N.W.2d 872, 882 (1988) (quoting 4 Fowler V. Harper, et al., The Law of Torts, Sec. 20.5 at 152 (2d ed. 1986)).
 
 
 75
 Moreover, the Nebraska Supreme Court has indicated that:
 
 
 76
 "If the original negligence is of a character which, according to the usual experience of mankind, is liable to invite or induce the intervention of some subsequent cause, the intervening cause will not excuse it, and the subsequent mischief will be held to be the result of the original negligence...."
 
 
 77
 Colvin v. John Powell & Co., 163 Neb. 112, 77 N.W.2d 900, 906 (1956) (emphasis added) (quoting Driekosen v. Black, Sivalls & Bryson, Inc., 158 Neb. 531, 64 N.W.2d 88, 89 (1954)).
 
 
 78
 In the same general vein, the Nebraska Supreme Court has stated:
 
 
 79
 "[T]he doer of an original wrongful act that should reasonably cause one to anticipate an injury therefrom is not relieved from liability for an injury immediately brought about by an intervening cause, wrongful or otherwise, that is set into operation by such original wrongful act, and that alone would not have caused the injury, but which with the aid of the original wrong does cause such injury."
 
 
 80
 Stodola v. Grunwald Mechanical Contractors, Inc., 228 Neb. 301, 422 N.W.2d 341, 344 (1988) (quoting Johnson v. Metropolitan Utilities Dist., 176 Neb. 276, 125 N.W.2d 708, 711 (1964)). The Stodola court continued:
 
 
 81
 "Generally, the effect of an intervening negligent act is tested by determining whether it was such as might reasonably have been foreseen as a consequence of the claimed negligence of the original actor.... The law does not require precision in foreseeing the exact hazard or consequence which happens. It is sufficient if what occurs is one of the kind of consequences which might reasonably be foreseen."Id. (quoting Brown v. Nebraska P.P. Dist., 209 Neb. 61, 306 N.W.2d 167, 171 (1981)) (emphasis added).
 
 
 82
 The test for an intervening cause under Nebraska law is thus clearly one of foreseeability. "The doctrine that an intervening act cuts off the liability of a tort-feasor comes into play only when the intervening cause is not foreseeable." Lincoln Grain, Inc. v. Coopers & Lybrand, 216 Neb. 433, 345 N.W.2d 300, 308 (1984) (citations omitted) (emphasis added). In this case, not only was the crash the foreseeable result of the government's negligent forecast, it was arguably the most likely result. Indeed, the majority itself holds that "a deadly crash is a foreseeable result of providing an inaccurate weather forecast." Ante at 1450. To hold that the accident was foreseeable and then that Budden's negligence was an intervening cause is logically inconsistent and at variance with Nebraska law, and a factual finding to the contrary is clearly erroneous.
 
 
 83
 Nebraska law recognizes that an accident can have more than one proximate cause:
 
 
 84
 If the effects of the actor's negligent conduct actively and continuously operate to bring about harm to another, the fact that the active and substantially simultaneous operation of the effects of a third person's innocent, tortious, or criminal act is also a substantial factor in bringing about the harm does not protect the actor from liability.
 
 
 85
 London v. Stewart, 221 Neb. 265, 376 N.W.2d 553, 556 (1985) (emphasis in original) (quoting Restatement (Second) of Torts Sec. 439 at 464 (1965) and stating that when the negligence of the defendant is continuing in nature, actions of both parties constitute concurring negligence).
 
 
 86
 In this case, the government was negligent in providing Budden with incomplete weather information, and that negligence proximately contributed to the crash. The Second Circuit's reasoning in Ingham v. Eastern Air Lines, Inc., 373 F.2d 227 (2d Cir.1967), a case with facts almost identical to those involved in the present case, is applicable here as well:
 
 
 87
 We are unable to conclude that the accident was not reasonably foreseeable as a result of the government's negligent failure to provide up-to-date weather information. Indeed, the government was the original wrongdoer whose negligence set in motion the entire chain of events which finally culminated in the tragic crash. The government's negligence was ever present.[4]
 
 
 88
 Id. at 237 n. 11.
 
 
 89
 That Budden may have negligently misjudged the deteriorating weather situation in which the government's conduct placed him does not absolve the government from its liability for its original negligent act.[5]
 
 
 90
 The result reached by the district court and now approved by this court is unrealistic. Assuming the pilot was negligent it is indeed speculative to determine what went through the pilot's mind and what decisions he faced in flying the helicopter at the time he encountered the unexpected low ceiling. However, assuming that the pilot was negligent, there is no question that the government was guilty of gross negligence as well. See Budden I, 963 F.2d at 194.
 
 
 91
 The majority fails to consider that Nebraska has a comparative negligence statute. The conduct of both the government and the pilot are concurring causes and under the Nebraska Comparative Negligence Statute[6] before the pilot can be barred from recovery, the trier of fact must compare the negligent conduct and make appropriate finding under the statute. The trial judge has not done this.
 
 
 92
 Furthermore, even assuming the trial judge would find that the negligence of the pilot, when compared with the gross negligence of the government, was such that the pilot would be barred from recovery, there would still be a question of the government having to make contribution in this indemnity action for the loss that the carrier has incurred in payment of the wrongful death claims of the passengers.
 
 
 93
 Because this case requires further remand and further finding, I respectfully dissent from the majority's opinion.
 
 
 
 [10]
 Although the trial court should have phrased its ultimate proximate cause determination in terms of the pilot's independent, intervening negligence, the court's analysis seems equivalent to such a determination. The trial court's opinion emphasized that "the sole proximate cause of the accident was the negligence of Budden in continuing to fly into deteriorating weather conditions." (Additional Findings on Remand, December 8, 1992.) The dissent suggests that the Government's negligence constituted a proximate cause of the accident as a matter of law, and that a remand is required for further findings on liability. We view the issue as fact specific and reiterate that while a different fact finder might have found otherwise, we cannot call the district court's proximate cause finding clearly erroneous
 
 
 [1]
 In Budden I we determined that FAA briefer Geranis committed a negligent act by breaching his duty to provide complete and accurate weather information. We did not determine whether Geranis' negligence constituted a proximate cause of the crash. Thus, references in Budden I to Geranis' negligence speak to his duty and breach of duty only, and not to any ultimate conclusion about whether appellants proved all the elements of actionable negligence
 
 
 [2]
 We consolidate appellants' numerous points of error into the sole question of proximate cause. In doing so, we note that the trial court made additional findings of fact to address the issues remanded to the district court. In addition, because we determine that Budden's conduct constituted an intervening cause, we need not take up appellants' arguments regarding contributory and comparative negligence
 
 
 [3]
 Rime icing is icing which occurs when an aircraft passes through a cloud. (United States' Appendix, Testimony of Mr. Smith at 327.)
 
 
 [4]
 The full transcription of the faulty weather briefing is contained in our Budden I opinion. 963 F.2d at 189
 
 
 [5]
 14 C.F.R. Sec. 135.11 (1989)
 
 
 [6]
 A scud cloud is an extremely low cloud, not more than 1,000 feet above ground level
 
 
 [7]
 Spacial disorientation occurs when a pilot experiences vertigo while flying
 
 
 [8]
 Because the FAA has undertaken to advise requesting pilots of weather conditions, thereby inducing reliance on its FSS facilities, it owes a duty " 'to see that the information which it furnishes is accurate and complete.' " Norwest Capital Management & Trust Co. v. United States, 828 F.2d 1330, 1333 (8th Cir.1987) (quoting Pierce v. United States, 679 F.2d 617, 621 (6th Cir.1982)). Geranis breached that duty when he failed to provide Craig Budden with a complete and accurate briefing
 
 
 [9]
 As noted above, the pilot should be presumed to have exercised due care in making his initial decision to fly, and thus we must assume that with full advice of weather information a flight cancellation would have followed. See Norwest, 828 F.2d at 1333
 
 
 [10]
 Although the trial court should have phrased its ultimate proximate cause determination in terms of the pilot's independent, intervening negligence, the court's analysis seems equivalent to such a determination. The trial court's opinion emphasized that "the sole proximate cause of the accident was the negligence of Budden in continuing to fly into deteriorating weather conditions." (Additional Findings on Remand, December 8, 1992.) The dissent suggests that the Government's negligence constituted a proximate cause of the accident as a matter of law, and that a remand is required for further findings on liability. We view the issue as fact specific and reiterate that while a different fact finder might have found otherwise, we cannot call the district court's proximate cause finding clearly erroneous
 
 
 [1]
 In its first opinion, the district court did not address the government's negligence in failing to warn the pilot. It was this significant omission which resulted in the remand of the initial appeal. See Budden v. United States, 963 F.2d 188 (8th Cir.1992) (Budden I )
 
 
 [2]
 If the district court's finding can be interpreted as a finding of fact, then it is clearly erroneous. As will be discussed, the majority's opinion explicitly holds that such a finding is in error. I would treat the district court's holding that the government's negligence under such circumstances could not be a proximate cause of the crash as an error of law. However, whether one treats this as an error of law or as a clearly erroneous finding of fact, it requires reversal
 
 
 [3]
 As will be discussed under Nebraska law, this second observation alone defeats a finding of an intervening, superseding cause
 
 
 [4]
 The two Fifth Circuit cases, In re Air Crash at Dallas/Fort Worth Airport, 919 F.2d 1079, 1088 (5th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 276, 116 L.Ed.2d 228 (1991) and Black v. United States, 441 F.2d 741 (5th Cir.), cert. denied, 404 U.S. 913, 92 S.Ct. 233, 30 L.Ed.2d 186 (1971), cited in the majority's opinion, are easily distinguishable on the facts. In neither case did the government fail to provide specific information to the pilot that would make it unlawful to take off
 
 
 [5]
 There is an old principle of common law addressing legal cause set forth in Fowler V. Harper, et al., The Law of Torts, Sec. 20.2 at 97 n. 17 (2d ed. 1986), quoting a Louisiana court in 1885 which reads as follows:
 See Reynolds v. Texas & P. Ry. Co., 37 La.Ann. 694, 698 (1885) ("where the negligence of the defendant greatly multiplies the chances of accident to the plaintiff, and is of a character naturally leading to its occurrence, the mere possibility that it might have happened without the negligence is not sufficient to break the chain of cause and effect between the negligence and the injury");
 Nebraska law would clearly endorse such a principle.
 
 
 [6]
 The Nebraska Comparative Negligence Statute reads as follows:
 In all actions accruing before February 8, 1992, brought to recover damages for injuries to a person or to property caused by the negligence or act or omission giving rise to strict liability in tort of another, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery when the contributory negligence of the plaintiff was slight and the negligence or act or omission giving rise to strict liability in tort of the defendant was gross in comparison, but the contributory negligence of the plaintiff shall be considered by the jury in the mitigation of damages in proportion to the amount of contributory negligence attributable to the plaintiff, and all questions of negligence or act or omission giving rise to strict liability in tort and contributory negligence shall be for the jury.
 Neb.Rev.Stat. Sec. 25-21,185 (1992).